ROBERT W. BARRETT ET AL. APPEAL FROM BOARD OF RELIEF.

First Judicial District, Hartford, October Term, 1902.
TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, Js.

General Statutes, § 3836 (repealed in 1901), provided that so much of the "capital" of any insurance company as might be invested in real estate upon which it was assessed and paid taxes, was to be deducted from the market value of its stock in its returns to the assessors. *Held:* —

1. That by "capital" the statute intended the surplus of the company's assets over its liabilities, being the fund to which the shareholder would look for his final dividend were the company to be wound up.

2. That mere proof that the difference between the assets and liabilities of the company amounted to more than the original capital plus the value of all its taxable real estate, did not necessarily show that the capital of the company had been invested in real estate; since there was no more reason for presuming that this difference was made up of, or included, such real estate, than there was for assuming that it was composed of stocks, bonds or other securities.

3. That without further proof of identity between such real estate and the surplus belonging to stockholders, the trial court was justified in refusing to allow them the statutory deduction.

Submitted on briefs October 9th—decided December 5th, 1902.

APPLICATION in the nature of an appeal from the doings of the board of relief of the town and city of Hartford, brought to the Superior Court in Hartford County and tried to the court, *Thayer, J.;* judgment for appellees, and appeal by the applicants. *No error.*

The case is sufficiently stated in the opinion.

*Lucius F. Robinson* and *William R. Matson*, for the appellants (applicants).

*William J. McConville* and *Joseph P. Tuttle*, for the respondent (the city of Hartford).

BALDWIN, J. Under General Statutes, Rev. of 1888,

§ 3836, so much of the " capital " of any insurance company " as may be invested in real estate, on which it is assessed and pays a tax " is to " be deducted from the market value of its stock, in its returns to the assessors." No company is within the benefit of these provisions, the stock of which has not a market value. The statute assumes that such a value will to some extent depend on the surplus of the company's assets over its liabilities, representing the fund in which the shareholder is equitably interested, and from which he would look for his final dividend, were the company to be wound up. To describe this surplus the word " capital " is used. *Batterson* v. *Hartford*, 50 Conn. 558, 561. It will be equivalent to the amount of the original capital with any accumulated profits, less all existing debts and liabilities. *Batterson's Appeal*, 72 Conn. 374, 376. The legislature seems to have thought that it would be inequitable to tax the shareholder both on the full market value of his stock, and on surplus property which helped to create that value, invested in real estate which was otherwise and directly taxed. *Ibid.*

No real estate, however, could fall within this description which might be held to respond to particular liabilities, and was not more than sufficient to meet them; nor any, whatever might be the nature of its tenure, which could not properly be set to the account of capital and surplus. The statute is one to be construed strictly rather than liberally, in determining any claims of shareholders to benefit by its provisions. *Barrett's Appeal*, 73 Conn. 288, 292.

. In the case at bar, an issue of fact was closed upon an averment that a portion of the capital of the Travelers Insurance Company was invested in real estate upon which it was assessed and paid taxes; and this issue was found for the appellees. Unless the facts specially found are inconsistent with this conclusion, it must stand, and is decisive of the merits of the controversy.

The burden of proof in the Superior Court was upon the appellants. The only material facts which they established were the following :—

The company originally engaged only in accident insur-

ance.   Afterwards it engaged in life insurance, and opened a separate set of books for the purposes of that business, which it styled its "Life Department."   The original set of books were thereafter kept and continued as those of its "Accident Department."

In the first ledger of the company there was an account crediting "Capital stock" with $100,000: in the present ledger of the accident department there is a similar account credited with $1,000,000.   That sum is the entire capital of the company.   No account with Capital has ever appeared on the books of the life department.   No account with Real Estate is kept in the accident department.   There is such an account kept in the life department, in which all the real estate owned by the company on October 1st, 1899, was entered, and given a ledger value of $1,930,247.50.   Some of this was land taken by foreclosure of mortgage loans made from funds of the accident department, the latter having exchanged such land for other investments held by the life department, of equal value.

The total assets of the company at that date were of the value of $27,098,340.11, and its liabilities amounted to $23,214,373.78, including the reinsurance reserve required by statute of $22,849,309.95.

The moneys received in the course of the business of each department are accounted for on the books of that department only; each having its separate items of investments, although investments held for one are occasionally exchanged for investments of equal value held for the other.

The charter of the company provided that its capital stock and surplus funds might be invested, among other things, in mortgages of real estate.   It made mortgage investments of funds from each department, resulting in foreclosures. Afterwards, in 1887, an amendment to its charter was passed, reciting that it was bound to accumulate a reinsurance reserve based on the mortality tables; providing that it might hold all real estate which it had acquired pursuant to its charter; declaring its investments in such real estate to be necessary and proper for carrying forward its chartered pur-

poses; and granting, in addition, power to invest not exceeding five per cent of its assets in productive real estate.

No statutory provision exists in any State where the company owns real estate, requiring such real estate to be held for the purpose of responding to particular liabilities.

There is nothing in any of these facts inconsistent with the judgment appealed from. The appellants did not sustain their burden of proof.

So far as the company's bookkeeping is concerned, it does not appear that any of the original capital is invested in real estate. If some of it was so invested temporarily, by reason of foreclosures, the land thus acquired was transferred to the assets especially belonging to the life department, in the books of which no account was ever kept with " Capital Stock."

The principal liability of the company is its reinsurance reserve. The recitals in the amendment of its charter, of 1887, would seem to indicate that it then had the intention, approved by the legislature, of holding its foreclosed real estate as a part of that reserve. Should the company ever be wound up, and should there then be any deficiency of assets, a serious question would arise as to whether those credited upon its books to each of its departments were not subject to a prior equity for the discharge of the special liabilities of that department.

It was the duty of the Superior Court to dispose of this application on equitable principles. General Statutes, § 3863 (Rev. 1902, § 2357). If this real estate equitably belonged to the reinsurance reserve, that fact bore upon the main issue, for it showed that the shareholders of the company had but a remote or nominal interest in it, the liabilities of the company, to respond to which that reserve was to be maintained, amounting to many times the value of all the lands on which a tax was paid. *Cutler's Appeal*, 74 Conn. 35, 37. Their stock was to be assessed at its full value, unless they could show that real estate materially contributing to that value had been taxed already. If the evidence failed to show that any of the real estate owned by the company

did so contribute, they were entitled to no relief. From the facts found, the trial court may properly have inferred that all the real estate belonged in equity to the "Life Department," and have come to the further conclusion that, under existing circumstances, it was to be regarded as equitably a part of the reinsurance reserve, to constitute which the bulk of the assets of the company had been accumulated and were being held.

The charter of the company authorizes it to purchase and hold lands; but prior to 1887 it specified certain modes of investing the "capital stock, moneys and personal estate," or "capital and surplus funds," among which the purchase of real estate was not included. 5 Special Laws, 529, 532; 6 id. 73. It is not found that any of the real estate now owned by the company was acquired in or after 1887. Whether or not, prior to that year, its capital could lawfully be invested in real estate, acquired otherwise than in payment of debts or by foreclosure of mortgages, the Superior Court was certainly not bound to presume that such investments were made, and to an amount exceeding the total capital stock.

The contention of the appellants virtually is that, as the company has a surplus of assets over liabilities, exceeding in amount both the original capital and the value of all its taxable real estate, this surplus must of necessity be presumed to include such real estate. Such a construction of the statute would make it possible for every prosperous insurance company, carrying large risks and holding assets proportionately large, to shield its shareholders from all taxation by keeping the amount of what, as to its creditors, would be its net surplus, always invested in taxable real estate.

If such an investment of capital and surplus can lead to that result, it can only be on strict proof that every statutory condition has been fulfilled, and in the case at bar the record does not show that such proof was made.

There is no error.

In this opinion the other judges concurred.