On July 29, 1942, the plaintiff purchased the property at 180 Westwood Road, New Haven, from the Union New Haven Trust Company. Under the terms of the agreement he assumed and agreed to pay taxes assessed upon the premises on the list of 1942 payable in 1943. The assessment date for property in New Haven is June 1st and on this date in 1942 the property in question was assessed for $17,800. Within the time provided by law the plaintiff appealed to the board of tax review for a reduction of the assessment made by the assessors, appeared before said board and answered all questions concerning his taxable property, and as a result of this hearing the assessment was reduced to $16,100. Not being satisfied with this reduction the plaintiff then appealed to this court claiming the value placed thereon was not the fair market value but was grossly excessive, disproportionate and unlawful.
Defendant denies this allegation, claims there was no fair market on or about June 1, 1942, upon which values of real estate could be based, and claims the plaintiff was not an aggrieved party within the meaning of the appeal statute.
Section 374c of the 1935 Cumulative Supplement to the General Statutes, as amended by section 164f of the 1941 Supplement to the General Statutes, under which the action is brought, provides: "Any person claiming to be aggrieved by the action of the board of relief .... may .... appeal."
It is the contention of the defendant that these sections limit the right of appeal to one who on the date of the assessment was the owner of the property and that a subsequent purchaser has no rights thereunder. In support of this theory several cases are cited principally based upon decisions in Massachusetts, where it is held only the person owning *Page 49 
the property on the date of assessment is aggrieved. Dunhamvs. City of Lowell, 200 Mass. 468; Hough vs. City of NorthAdams, 196 id. 290; Hamilton Mfg. Co. vs. Lowell,
274 id. 477, 74 A.L.R. 1213.
Section 59 of chapter 59 of the General Laws of Massachusetts, under which the action is brought, however, provides: "A person aggrieved by the taxes assessed upon him
may .... apply to the assessors for an abatement thereof." (Italics added.) Such a limitation does not appear in our statute. Even under the above wording the court in theHamilton case, supra, held that a purchaser who assumes taxes is one beneficially interested, and allowed him to prosecute the abatement in the vendor's name.
The problem has been passed on recently in New York. Section 290 of the Tax Law provides: "Any person assessed upon any assessment-roll, claiming to be aggrieved by any assessment for property therein, may present to the supreme court a petition...."
In People ex rel. Bingham Operating Corp. vs. Eyrich,179 Misc. 197, 38 N.Y.S.2d 326, the property on July 1, 1942, was owned by the X Company and it conveyed to the relator on September 24, 1942. The assessment roll was completed July 31, 1942, notice was given on August 14, 1942, that the assessors would be present to hear objections, and on September 1, 1942, the assessment roll was completed and filed. Thus, it appears that the property was owned by the X Company when the property was assessed, on the review day, and at the time the assessment roll was completed and filed, but that during the 30 days in which the petition to review the assessment was required to be presented to the court (§ 291) the property was transferred to the relator. The factual situation is almost identical with the present case and the defense of not being a party aggrieved was set up. Therein it was held that a tax law relating to a review of assessments is remedial in character and should be liberally construed to the end that the taxpayer's right to have his assessment reviewed should not be defeated by a technicality.
"Is the relator, the new owner, a `person assessed?' It is not the named person against whom the assessment is made. A `person assessed' is a person whose property is assessed. It is not the party who is assessed but the property. When the *Page 50 
relator became the owner of this property, it became, and the original owner ceased to be, a `person assessed', that is, a person whose property is assessed.
"Is the relator `aggrieved?' A person who is improperly assessed is aggrieved because he will be obliged to pay a tax on an improper assessment. Having become the owner of the property the relator will have to pay the tax assessed under the assessment and, if the assessment is excessive, it is aggrieved and will be injured by being compelled to pay an excessive tax." People ex rel. Bingham Operating Corp. vs.Eyrich, 179 Misc. 197, 199, 38 N.Y.S.2d 326, 329.
In Ives vs. Goshen, 65 Conn. 456, 460, it is stated: "An applicant can be aggrieved only by such action of the board of relief as must result in his payment of an unjust and therefore practically illegal tax; this can happen only by an improper listing of his own property, or, by an improper listing of the property of others so as to increase his taxation."
Under the probate appeal statute (Gen. Stat. [1930] § 4990) where "any person aggrieved" is given the right of appeal any one who has a pecuniary interest which the decree affects injuriously is within the statute. Avery's Appeal, 117 Conn. 201.
The test of the existence of a pecuniary interest is deemed sufficient. Spencer's Appeal, 122 Conn. 327, 332.
Thus, it would seem that any showing by the plaintiff that he had a sufficient financial interest in the matter which would be affected should afford him the benefit of the statute.
A further fact compels the court's conclusion that the plaintiff is aggrieved and that arises from the fact that he made an appearance before the board where he was recognized as the owner and it was as the result of his own pleading that the assessment was reduced by $1,700. This would seem to estop the defendant from assuming a contradictory position at this time, especially when the new tax bill was based on the lowered figure.
Section 1143 of the General Statutes, Revision of 1930, provides that property of this character shall be set in the list at its "present true and actual valuation", and section 1149 that the present true and actual value of any estate shall be deemed to be "the fair market value thereof, and not its value at a forced or auction sale." *Page 51 
The words "market value" in this statute mean a value in a market, in a place or in conditions in which there are, or have been or will be within a reasonable time, willing sellers and able and ready buyers of property like that to be assessed, and in which sales are or have been made, or may fairly be expected, in the usual and natural way of business. That the idea of sales and of unconstrained sellers and ready buyers is in the essence of the meaning of the phrase "market value", is indicated in the terms of the final cause "and not its value at a forced or auction sale."
There was evidence of an active market for property in the immediate vicinity. In the past five years, within a radius of three blocks in all directions of this property, there had been over 50 sales. Of this number, about seven have been singled out as being comparable to the subject property and the prices of these range from $6,500 to $11,500. Land values for the most part are uniform at $50 per front foot, the wide variance being in the type of house constructed.
Defendant contends most of the sales come within the exception of the statute but the court is unable to find a sufficient basis in the facts to support this. It does appear, however, that most of the sales involved were of property held by banks or estates and the court is of the opinion that they did not represent a fair criterion in establishing a fair market upon which values of real estate could be based. Its "true and actual valuation" must therefore be determined by some other method of valuation. Underwood Typewriter Co.vs. Hartford, 99 Conn. 329, 337.
Considerable evidence was introduced under the other theories of determining valuation where an active market is not present. Under the reproduction cost theory, experts for the defendant found this figure to be $18,567, including both the house and garage. Depreciation was set at 35%, thus giving $12,068 and figuring the land at $50 per front foot they justified the value of $16,100 as placed on the property by the board of tax review.
Witnesses for the plaintiff, however, placed the reproduction cost at $19,390, used the same 35% for depreciation but also made an allowance for what they termed functional and economic depreciation of 40% on the house and 25% on the garage. Thus, with their value of $30 per front foot on the *Page 52 
land, the total valuation of the premises amounted to $7,500. The wide variance between the two estimates is accounted for by the functional and economic depreciation allowance. This takes into consideration anything about the property which would make it less desirable than a brand new house built today. For example, the architectural design might be out of date and this might be true of the electrical and plumbing fixtures, kitchen arrangement and other items which would make it less desirable than a modern house built today. Again the type of neighborhood and the inroads made by business enterprises or the manner in which the property is kept up is given greater consideration. True it is that items of this nature may be given consideration under the element of obsolescence but the court is of the opinion that the percentage of allowance as claimed by the plaintiff's witnesses is too great, all things being considered.
The house is constructed of stucco on hollow tile and in several places has apparently settled with the result that the floors in different parts of the house are at different levels, necessitating in some places the cutting of doors so that they could be opened and closed. In this type of construction it was argued it would not be possible to raise the supports to alleviate this condition without developing cracks in the stucco which would cause considerable expense to correct. In comparing similar properties in the immediate vicinity which were classed as more desirable than the subject property, it developed that two on the other side of the same street were assessed at $9,500 for the building with a $50 front foot valuation of the land. One was sold in 1938 for $10,500, and the other in 1941 for $6,500.
Many factors may enter into the determination of the value of a piece of property. Its value is, in the final analysis, a matter of opinion. Ford vs. Dubiskie Co., Inc., 105 Conn. 572,580.
The determination of its value by a court is the expression of the court's opinion aided ordinarily by the opinion of expert witnesses, and reached by weighing those opinions in the light of all the circumstances in evidence bearing upon value and its own general knowledge of the elements going to establish it. Appeal of Cohen, 117 Conn. 75, 85.
In view of the foregoing and all the evidence in the case, *Page 53 
the court is of the opinion that the assessment is manifestly excessive and could not have been arrived at except by disregarding the provisions of the statutes for determining the valuation of such property.
 Whereupon it is adjudged that the valuation of the property in question as of June 1, 1942, for purposes of taxation, shall be as follows: land $4,000; buildings $9,500; and the plaintiff recover of the defendant his costs.