LAWRENCE C. THAW *v.* TOWN OF FAIRFIELD

MALTBIE, C. J., BROWN, JENNINGS, ELLS and DICKENSON, Js.

Argued April 5—decided June 1, 1945.

*Frederick Miles,* for the appellant (plaintiff).

*William Reeves,* for the appellee (defendant).

DICKENSON, J. The plaintiff purchased property in Fairfield in October, 1941, for $65,000. The defendant made an assessment of $125,270 on the property as of October 1, 1941. The land was assessed for $28,710, and the main dwelling for $82,430. Minor buildings made up the balance of $14,130. The plaintiff appealed from the entire assessment, but during trial abandoned that as to the minor buildings. The trial court found that the assessment represented the true and actual value of the property. From this judgment the plaintiff has appealed. His main contentions are that the price he paid for the property is the proper value for assessment purposes and that the judgment was erroneously based upon replacement costs of the building and not on market value. No material correction can be made in the finding. The facts are as follows:

The property in question had belonged to Lawrence C. Jennings. It consists of 46.99 acres of land on which are a main dwelling of twenty-one rooms, a gate lodge, a farmhouse, a chauffeur's cottage, a large garage and several smaller buildings. It is situated in a lovely residential district, secluded but conveniently near the business center of Fairfield and about three miles from the Merritt Parkway. There are many fine residences in the neighborhood. The main dwelling cost Jennings $135,898 to build in 1928 and, except for minor disrepair, was in good condition at the time the plaintiff bought the property. Relatives of Jennings had owned and occupied nearby estates, but some had died and others had moved away, and, at the time of the sale to the plaintiff, Jennings was the last of his

family in the neighborhood except for a sister. He was very wealthy. He bought a large place in New York state where he intended to make his home and offered the Fairfield property for sale for $75,000. He accepted the plaintiff's offer of $65,000 a week later. The trial court found that, while he was a willing seller and the plaintiff a ready buyer, the sale was not made in the "usual and natural way of business" but was a "liquidation sale." The plaintiff treats this as the equivalent of a finding that it was a forced sale and claims that the subordinate facts require a contrary conclusion. The basic finding of the trial court is that the assessment of the plaintiff's main dwelling and land was at their then true and actual value. The plaintiff's main contention is that this finding cannot be sustained. It is agreed that there was a market for property like that of the plaintiff.

We lately had occasion to review the authorities and restate the rules relating to the determination of the amount for which property should be assessed for taxation. *Connecticut Savings Bank* v. *New Haven,* 131 Conn. 575, 41 Atl. (2d) 765. We stated in that case that the basis of this determination is the present true and actual valuation, and that in arriving at that figure the ordinary basis is what the property would bring in a fair market and not at a forced sale. We added that the value of property is dependent on many factors and in the final analysis is a matter of opinion; and that the best test is ordinarily that of market sales, but (p. 582) that all of the evidence, including that of experts and of sales, is to aid the trier to arrive at his own conclusion.

It sufficiently appears from this statement of the rule that the price paid by the plaintiff in the instant case did not necessarily fix the true and actual value of the property. It is evidence of its value in the same

sense that the sale price of other comparable properties would be. As in case of such properties, the circumstances of the sale also may be inquired into. Market value as shown by sales means "the price or value of the article established or shown by sales public or private in the way of ordinary business." *Connecticut Savings Bank* v. *New Haven,* supra, 582; *New Haven Trust Co.* v. *Doherty,* 74 Conn. 468, 472, 51 Atl. 130. The fact that a sale is not forced does not prevent inquiry into the circumstances in which it was made, nor does it prevent the trier from weighing the value of the sales price as evidence in the light of such circumstances. As was said in that portion of the dissenting opinion in *Connecticut Savings Bank* v. *New Haven,* supra, 587, which restated the holding of the majority, "Market value as applied generally to a piece of land, particularly if there is a building upon it, has a very different significance than when used, for example, with reference to a security sold upon an exchange. 'Market' as applied to land usually means no more than that it is salable within a reasonable time and upon reasonable opportunity afforded to possible purchasers; and value is represented by the price which probably would be paid for the particular piece of property as a result of fair negotiations between an owner who is willing to sell and a buyer who desires to buy." In determining market values, "it is proper to consider all those elements which an owner or a prospective purchaser could reasonably urge as affecting the fair price of the land." *Andrews* v. *Cox,* 127 Conn. 455, 458, 17 Atl. (2d) 507. Among these may be replacement costs when there are buildings.

The use by the court, in the case before us, of the expression "liquidation sales" is not a happy one, but it was evidently seeking to give expression to the fact, to which two witnesses testified, that a predominating

influence in the sale was a desire on the part of Jennings to dispose of the property speedily. This was a legitimate inference and the court might well have concluded that the sale was not one "in the way of ordinary business." Further, it does not appear that the court entirely disregarded the purchase price in fixing the value of the house and land. The defendant's experts appraised the property at a figure considerably above that at which it was assessed. The court accepted neither that figure nor the plaintiff's valuation, but found the true value to be the value at which it was assessed. The court was not in error in failing to adopt the purchase price as determining the assessable value of the property.

The plaintiff claims that the trial court erroneously gave controlling weight in its decision to evidence of replacement costs of the dwelling house, in preference to market sales prices, and also accepted such evidence although it did not have proper foundation. The court found that the defendant's experts "gave sound, substantial and legal reasons" in support of their opinions as to value, and so it presumably gave them some weight in arriving at its decision. While reference by the experts was made to cost of construction and depreciation, the trial court could have found that their estimates of value were not based solely on these elements. They were qualified as real estate experts in the same manner that the plaintiff qualified his experts, by testimony that they were experienced real estate agents, familiar with the property in question and with the value of similar properties in the neighborhood. They testified as to the value of the entire property and, when asked for a breakdown, gave figures as to the dwelling house based upon replacement costs. The plaintiff contends that these figures furnished no proper basis for their estimates because

they did not include depreciation in one instance and, in another, did not show the real cubic content of the house. The trial court did not accept the testimony of these experts as fixing the assessable value of the property; it found this value considerably less. We cannot say that it was not entitled to consider this evidence and give it some weight. Nor can we say that it gave it controlling weight. A plaintiff prevails not by reason of the weakness of the defendant's case but because of the strength of his own. The burden in such a proceeding as this, as in other actions, is upon the plaintiff to prove his material allegations. *Barrett's Appeal,* 75 Conn. 280, 281, 53 Atl. 591. It was for the court to determine what credence it would give to the plaintiff's experts. It might well have questioned the reliability of their testimony and found that the plaintiff had failed to sustain his burden of proving an excessive assessment.

The plaintiff makes the further claim that the assessment as to the land was discriminatory in that a comparison of acreage value with that placed on neighboring estates shows a considerable disproportion to the plaintiff's disadvantage. He attacks the court's finding that the assessments were uniform and were not inequitable and disproportionate. In determining values by comparison, the properties must be similarly located and of like character. *Cohn* v. *Hartford,* 130 Conn. 699, 704, 37 Atl. (2d) 237; *Campbell* v. *New Haven,* 101 Conn. 173, 185, 125 Atl. 650. The value of land by the acre in this neighborhood was far from uniform. It varied according to the location of the acreage. Assessment values on these lands ranged all the way from $123 per acre to $1500. The plaintiff's land was assessed at an average valuation of about $600 an acre. We cannot say from the evidence that the plaintiff's acreage was taxed disproportionately to

land of other properties of like character. "It is largely a question of judicial discretion whether the requisite similarity of conditions has been established." *Cohn* v. *Hartford,* supra, 704. Nor may the plaintiff have relief, in such a proceeding as this, on the ground that the property of other taxpayers is assessed at too low a rate. *White* v. *Portland,* 63 Conn. 18, 22, 26 Atl. 342; see *Foote* v. *Branford,* 109 Conn. 358, 146 Atl. 723. Evidence of disproportionate assessments of other properties may only be considered in such an action as this in relation to the true and actual value of the plaintiff's property.

The plaintiff has assigned error in rulings on evidence. The only rulings that warrant discussion are as follows: The plaintiff asked an expert witness called by him, who had testified that he had observed a definite trend since 1930 in the market price of estates similar to that of the plaintiff, what that trend was, and later the same witness was asked whether or not he considered that "a normal price level" for such estates had been reached in Fairfield on October 1, 1941. The trial court excluded both questions. The claim made to the trial court for the admission of the first question was that only by observing such trends could it be determined that there was a "normal market" for estates such as that of the plaintiff on the taxing date; no particular basis for claiming the second question was stated. The test for deciding whether or not the rulings were correct is the claims there made, not the different ground stated in the plaintiff's brief. Conn. App. Proc., p. 61. If the questions had been claimed as affecting the weight to be given testimony of the prices realized on sales in the market at other times than the taxing date, or if they had been adapted to bring out the fact that opportunities to sell such properties as that of the plaintiff had decreased,

or if other facts showing the relevancy of the testimony appeared, a very different situation would be presented. As the finding stands, the only effect the answers to the questions could have would be to indicate that the value of the property on the taxing date was not that which it "normally" would have. The issue on such an appeal as this is the true and actual value on the taxing date; whether or not that was its "normal" value as compared with other years would be immaterial. *Connecticut Savings Bank* v. *New Haven, supra*, 584. In the absence of other circumstances showing the relevancy of the questions, the trial court was not in error in excluding them.

There is no error.

In this opinion the other judges concurred.