RAFAEL A. BUSCAGLIA, TREASURER OF PUERTO RICO, Petitioner, *v.* TAX COURT OF PUERTO RICO, Respondent; HEIRS OF ABARCA, INC., Intervener.

No. 176. Argued January 10, 1949.—Decided April 14, 1949.

Vicente Géigel Polanco, Attorney General (Luis Negrón Fernández, former Attorney General, on the brief) and Carlos Santana Becerra, Assistant Attorney General, for petitioner. D. Guerrero Noble, for intervener.

MR. JUSTICE MARRERO delivered the opinion of the Court.

The intervener, Sucesores de Abarca, Inc., and the petitioner, the Treasurer of Puerto Rico, filed in the Tax Court a stipulation, the essential paragraphs of which are as follows:

"A—That the sum of $11,412.85 which represented bank credits be eliminated from the assessment of the personal property for the year 1944–45, the sum of $1,027.15 remaining as taxable.

"B—That since there is a duplicity in the assessment of the lot of 450 square meters together with house and garage therein, in Palma Street, Miramar, year 1944–45, the assessment of $5,400 in the name of the complainant be upheld, and the sum paid under receipt No. 20 for 1944–45 issued in the name of Sucesores de Abarca, S. en C. on the same property assessed at $5,000 be credited to said complainant.

"C—That in the item of $27,910 entitled 'Land Improvement' there is an error, and the same should be reduced to $5,317.46. It is made clear that the plaintiff maintains that

it is not bound to pay the tax on said $5,317.46, because it represents improvements on the land leased to Sucesión Abarca, where it operates its business.

"D—That in connection with the item 'Buildings and Machinery' amounting to $297,370 (Exhibit A of the Plaintiff), the controversy was confined to a determination of the reasonableness of the depreciation suffered by the machinery to which there was fixed a valuation of $166,481. The assessment of $52,844 fixed on the buildings included in the item of $297,370 is accepted.

"E—That the total valuation includes the item of $56,112 called 'Livening (sic) Factor' by the appraiser Eduardo E. Saldaña. It is made clear that the plaintiff maintains that said item should not be added to the assessment of the property as the same is considered arbitrary, discriminatory, unreasonable, and improper.

"F—That case P-369 T. C., year 1945-46 between the same parties is identical to that of the year 1944-45, with the exception of letters A and B of this stipulation, for which reason the parties agree to submit it to this Honorable Court by the same evidence introduced in case P-259 T. C., making it clear that in case P-369 T. C. the petitioner agreed with and paid the tax on the sum of $159,220."

The cases were tried jointly and after considering the evidence introduced by both the plaintiff and the defendant, the respondent court rendered two decisions holding as correct and valid the assessment of $2,250 for the lot of 450 square meters, that of $3,150 for the buildings located therein, and that of $5,317.46 for the land improvements, but setting forth that the latter should be appraised together with the land and taxed to the person appearing as owner thereof; sustaining the complaints as to the item of $56,112 which was included by the Treasurer as enlivening factor and ordering the latter to abstain from adding any amount for such concept in his determination of the value of the real property of the plaintiff corporation; and dismissing said complaints in all other particulars. To review the decisions thus rendered, we issued the writ of certiorari authorized by Act No. 169 of May 15, 1943 (Laws of 1943, p..

600, 610), but only as to what was decided by said court in connection with paragraphs C and E of the above stipulation, that is, regarding the item of $5,317.46 for the land improvements and the $56,112 for the so-called enlivening factor.

The petitioner has sent up only part of the evidence which was introduced in the Tax Court. This was due, as alleged by him, to the fact that one of the stenographers who intervened in the case resigned· from his position in the government and in spite of the steps taken by the petitioner for said stenographer to transcribe the notes he took at the hearing, upon payment for his work, he has not been able to make him do so. It is incumbent on the petitioner, however, to place this Court in a position to decide the proceeding. Upon sending up only part of the transcript of the evidence he runs the risk of our not being able to properly decide some of the questions raised by him. *Buscaglia* v. *Tax Court, Llamas Muñiz, Intervener*, 67 P.R.R. 30, 31. That is precisely what happens in this case, inasmuch as the evidence which we have before us solely consists of the testimony of the witnesses for the intervener herein. We do not know what was the evidence introduced by the Treasurer. The evidence before us shows that the item of $5,317.46 pertains to improvements on the land wherein the buildings occupied by the intervener are located, and also that the latter is not the owner either of the buildings or of the lands occupied by it, it being, on the contrary, lessee thereof and paying the lessors a rental for its use. Under those circumstances, it is natural that said improvements be assessed to the owner thereof and not to the lessee. Section 298 of the Political Code. The Tax Court did not err in so holding.

The item of $56,112 mentioned in paragraph E of the stipulation pertains to what the witness Eduardo E. Saldaña called enlivening factor. This witness was called to testify by the intervener. His testimony, joined to the other

evidence sent up, shows beyond any doubt, that the method followed to fix the so-called enlivening factor was wholly arbitrary, discriminatory, and unreasonable. Let us see:

Sucesores de Abarca, Inc., operates a foundry in the ward of Miramar of Santurce. In addition thereto it is engaged in the purchase and sale of merchandise; in the commission business, especially for machinery; in performing emergency work for steamships; in working as experts and consultants and in making contracts with sugar factories for the installation and tearing down thereof.

Upon assessing the real property of the intervener the Treasurer added to the physical value thereof what he called enlivening factor and when computing the latter he took into consideration (1) the net profit yielded by the enterprise during the last two years, according to the returns filed by it; (2) the annuities for the reserves required for the replacement of the different equipment of the enterprise, to wit: reserves for workshops, furniture, automobiles, trucks, and laboratory; (3) the net profit which reasonably should be yielded by the absolute value of the properties and (4) the reasonable working capital for the enterprise. Since the intervener had organized as a corporation only two years ago, the Treasurer added the income reported by the former for each year, that is: $230,847.94 for 1942, $207,417.73 for 1943, these two items giving an average net income of $219,132.84 for each year. He assumed that in the expenses reported by the intervener it had included all the taxes paid by it and fixed (it does not appear from where he took these amounts) the following items as reserves: $13,219 for workshops, $864 for replacement of furniture and $1,155 for replacement of automobiles, trucks, and laboratory. Witness Saldaña, who as an officer of the Department of Finance appraised the properties of the intervener and who, as we have already stated, was placed in the witness stand by the intervener, failed to testify, however, that he had knowledge of the different businesses or activities engaged in by the·

plaintiff within and outside of the buildings appraised; or whether such buildings had been expressly constructed for the industry and businesses which the intervener operated; or whether the buildings could be satisfactorily used in any other business or industry; nor on the grounds on which the Treasurer based the total calculation made of $15,238 for the reserves above mentioned. As to the profits, this witness calculated that the absolute value of the properties of the intervener was $610,185 but did not state how he had reached that figure. He thought that 15 per cent was a reasonable rate of interest and multiplying the said $610,185 by 15 per cent, he concluded that $91,527.75 was a reasonable net profit. He also stated that the sum of $100,000 represented an adequate working capital for the corporation; and he added to that working capital the $15,238 for reserves and the $91,527.75 which he had determined as profits, all this totalling $206,765.75. From the $219,132.84 computed as average income for each year, he subtracted $206,765.75 obtaining then a difference of $12,367.09, equivalent to what the witness called the remainder. He capitalized that sum at the rate of 16 per cent, and he obtained an enlivening factor of $77,295. However, that amount was not used by the Treasurer in his assessment as enlivening factor. Instead he fixed such factor at $56,112. This was due to the fact that the Treasurer used the amount of $632,775 as absolute value of the property and not the $610,185 used by witness Saldaña. The difference between the absolute value of the properties mentioned by the appraiser of the Treasurer and that used by the latter is due to the fact that the Treasurer admitted having committed an error in appraising the land improvements. (See subdivision C of the stipulation, according to which the Treasurer admits having made a mistake in appraising the improvements at $27,910 instead of $5,317.46.)

As may have been seen, the amounts taken for reserves were arbitrarily fixed. The same thing happened with the

.15 per cent fixed as reasonable rate of interest. The same thing occurred with the $100,000 fixed as working capital,[1] and with the rate of interest of 16 per cent, which was taken to capitalize what was called the remainder. Since these amounts and rates of interest were taken arbitrarily, capriciously, or by chance, logic indicates that the result obtained must be likewise arbitrary and capricious.

It is a well-settled presumption in law, that in matters of taxation the tax assessments made by the Treasurer of Puerto Rico are presumed correct. *Mayagüez Sugar Co.* v. *Sancho, Treas.*, 64 P.R.R. 699; *Sunday Lake Iron Co.* v. *Wakefield*, 247 U. S. 350; *Alfred J. Sweet, Inc.* v. *City of Auburn*, 180 Atl. 803, 104 A.L.R. 784; Cooley, Taxation, vol. 3, 4th ed., § 1011, p. 2041; Id. § 1073, p. 2182. The commission of a mere error by the Treasurer or the fact that the court has a different opinion regarding the value of the properties is not enough to invalidate the assessment thereof. *Chicago G. W. Ry.* v. *Kendall*, 266 U. S. 94. The assessment made by the Treasurer will be annulled only when it is shown that the same is unreasonable, arbitrary, unjust, and discriminatory, therefore resulting in an abuse of the rights of the taxpayer. *Great Northern Ry.* v. *Weeks*, 297 U. S. 135; *S. S. Kresge Co.* v. *City of Detroit*, 276 Mich. 565, 268 N. W. 740, 107 A.L.R. 1258; *Alfred J. Sweet, Inc.* v. *City of Auburn, supra.* In the instant case the evidence briefly summarized by us shows in a clear manner how unreasonable, arbitrary, discriminatory, and unjust was the method or valuation used by the Treasurer. For that sole ground the addition of the so-called enlivening factor can not be upheld.

But there is something more. The so-called enlivening factor is not applicable where real properties such as those belonging to the intervener are assessed. The en-

---

[1] The intervener introduced evidence, which does not appear controverted, to the effect that its working capital on June 30, 1943 amounted to $569,201.93, and on June 30, 1944 to $724,408.83.

livening factor is used when assessing real and personal property of public service enterprises, especially for the purpose of fixing fares or levying a franchise tax on said enterprises. It is so shown by the cases cited by the petitioner.[2] It is likewise shown by the textwriter Bonbright in volume I, pp. 511, 595 and following, of his work *Valuation of Property*. See also 41 Yale L. J. 487.

██ The Political Code provides in its § 295 "That as soon after January fifteenth of each year as is possible it shall be the duty of the assessor of each assessment district to fill out an assessment schedule showing in detail *each separate piece of real property* and improvements thereon, . . . The assessor, however, shall not be bound in any manner by the list of property or the value placed thereon as thus returned by a tax-payer, but shall proceed upon the information thereby obtained, and such other information as he may be able to obtain, *to assess the property at its actual value, without looking to a forced sale, according to his best information and belief."* (Italics ours.) The actual value of real property can in no way be the replacement cost thereof less depreciation and obsolence plus the average profits yielded during a certain number of years by the business or industry operated on such real property. The actual value of real property, without looking to a forced sale, must be undoubtedly, the market value thereof. *Mayagüez Sugar Co.* v. *Sancho, Treas., supra; Thaw* v. *Fairfield,* 160 A.L.R. 679; 43 Atl. 2d 65; *Phillips Petroleum Co.* v. *Townsend,* 63 Fed. 2d 293.

The Treasurer, in our judgment, has desired to apply to the instant case under the name of enlivening factor what is generally known in American law as earning capacity. This earning capacity is ordinarily used to fix the assessment

---

[2] *Susquehanna Co.* v. *Tax Comm.,* 283 U. S. 291; *Southern Ry. Co.* v. *Kentucky,* 274 U. S. 76; *Omaha* v. *Omaha Water Co.,* 218 U. S. 180; *Smyth* v. *Ames,* 169 U. S. 466; *Monongahela Navigat'n Co.* v. *United States,* 148 U. S. 312; *Texas-Empire Pipe Line Co.* v. *Commissioner of Internal Revenue,* 127 Fed. 2d 220.

value of those properties which by themselves yield profits. For example, in assessing an apartment building there is taken into consideration, among other things, its productivity, that is, the total rent produced by the building. That is natural and logical, since an apartment building, which by its general conditions, neighborhood, etc. produces a small income to the lessor should never be assessed for an amount similar to that of an apartment building situated in the best residential section, maintained in the best conditions, and leased to tenants who pay high rentals. There may be a similarity between an apartment building constructed in a poor neighborhood and another located in a neighborhood of rich families, but logic indicates that the appraisal of both must be different. As a general rule, the income-producing capacity of an immovable, as distinguished from actual earnings of the business or industry operated therein, should be regarded as the factor in valuation of real property for taxation purposes. *Somers* v. *Meriden*, 95 A.L.R. 434; 51 Am. Jur., § 698, p. 650; L.R.A. 1916 C 529.

Before closing this opinion we should state that in addition to citing and amply commenting the cases which appear in footnote 2, the Treasurer of Puerto Rico in discussing in his brief the so-called enlivening factor lays great stress in what was stated by us in the case of *Mayagüez Sugar Co.* v. *Sancho, Treas., supra.* However, that case does not have the scope attributed to it by said officer. In said case we held, briefly, that every tax assessment made by the Treasurer is presumed to be correct, and that such assessment shall be upheld unless the taxpayer who challenges the same shows by persuasive evidence that the assessment is so excessive as to be unjust and confiscatory and shows to the court what is the reasonable market value of the property, and that the Mayagüez Sugar Co. had not overcome such presumption in confining itself to prove the original cost less the depreciation of the property. It is true, however, that in that opinion we used the phrase enlivening factor. We used it inciden-

tally, however, when mentioning the method used by the Engineer Assessor of Sugar Factories in the Treasury Department, when assessing the property involved in said case. But in no way we held therein that when assessing real property belonging to industrial enterprises for the purpose of fixing its actual value such as is provided by § 295 of the Political Code, the so-called enlivening factor could be used. It is also true that at the end of said opinion we stated that "Inasmuch as the plaintiff did not offer in the lower court a computation which reasonably revealed the market value of this property, that is, what someone wanting to buy would be willing to pay for it considering its location, condition, and *the profits that the factory might yield*, we must conclude that the lower court did not err in dismissing the complaint." (Italics ours.) However, in referring to the profits which said factory might yield, our purpose was no other than to refer to the profits which the properties upon being assessed yielded by themselves, but never to the earnings yielded by the industry proper. That is why we cited therein the annotations which appear in L.R.A. 1916 C, p. 529 and in 95 A.L.R. 442, which, as we have already stated, when citing them again in this opinion, refer to earning capacity and not to the enlivening factor.

The decisions appealed from will be affirmed.

Mr. Justice Negrón Fernández did not participate herein.