[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
By a revised appeal dated April 21, 1994, the plaintiff, a partnership, is appealing from the action of the Hebron board of tax review (the board) in not reducing the assessor's valuation of the plaintiff's property on the list of October 1, 1993. On that day, the plaintiff owned in Hebron a parcel of land designated as Lot 34 on a map entitled, "Subdivision Map of Lots from 32 up to 38. Of Lake Amston, Section "E" Prepared for Amston Lake Co. Hebron, Connecticut Scale 1"=50', Date, Nov. 1964 Ferdinand A. Czwaczka, Reg. L.S. Marlborough, Connecticut." Although Lot 34 is bounded southerly by Ames Road, the deed of Lot 34 to the plaintiff erroneously describes the lot as bounded northerly by Ames Road. The parties have agreed that, for the purposes of this appeal, the description errors in the deed may be disregarded. CT Page 8301
In the appeal, the plaintiff claims that the valuation that the Hebron assessor placed on its property for purposes of taxation by Hebron violates Conn. Gen. Stat. sec. 12-64, and that the board erred in not reducing that valuation. Section 12-64 provides that property not exempt from taxation shall be liable to taxation at a uniform percentage of "its present true and actual valuation." The plaintiff claims that the valuation by the assessor and the board exceeds that "present true and actual valuation." Conn. Gen. Stat. sec. 12-63 mandates that the words "present true and actual valuation" mean "fair market value" and "not . . . value at a forced or auction sale." The words "actual valuation, market value, actual value, fair market value, market price and fair value are synonymous in the valuation of property for assessment purposes."Uniroyal, Inc. v. Board of Tax Review, 182 Conn. 619, 623 n. 8,438 A.2d 782 (1981). As required by Conn. Gen. Stat. sec. 12-62a(b), for purposes of local taxation Hebron has assessed property liable to taxation "at a uniform rate of seventy percent of present true and actual value."
By stipulation of the parties, the appeal has been referred to me, as a state trial referee, for a hearing and judgment. In the course of the hearing, three exhibits were introduced; the court heard testimony and received an appraisal report from the appraiser for the plaintiff (the plaintiff's appraisal), and from the assessor of Hebron (the defendant's appraisal), and heard testimony from one of the partners of the plaintiff and from an appraiser engaged by Hebron. The court also viewed Lot 34 and had the benefit of briefs submitted by counsel for each party. The court also took judicial notice of Tolland Judicial District file No. CV 91-48376, F.P.R. Associates v. Town of HebronConservation Commission. The plaintiff's appraisal found the fair market value of Lot 34 to be $1,500, and the defendant's appraisal found the fair market value of Lot 34 to be $12,000.
 I
Lot 34 is an unimproved lot of record consisting of approximately 10,000 square feet, measuring approximately 100 feet in each direction. The lot is wetlands, receiving both runoff from surrounding uplands and discharge from other wetlands. Trees, shrubs, and dense herbaceous vegetation cover a large portion of the lot. The plaintiff bought the lot for $15,000 in 1988, believing and intending that the lot could be improved by a single-family seasonal dwelling and, as improved, offered for sale or rent. Subsequently, the plaintiff learned that, to construct the dwelling, the plaintiff had to obtain a permit from the Hebron Conservation Commission (the Commission). By an application dated March CT Page 8302 20, 1991, the plaintiff applied to the Commission for an Inland Wetlands and Watercourses (IWWC) permit to construct on the lot a single-family seasonal dwelling, 28 feet by 24 feet.
On July 30, 1991, the Commission entered an order denying the plaintiff permission to conduct the activity described in the application. The plaintiff appealed from that order to the Superior Court; in that appeal, the plaintiff alleged that the Commission acted illegally in refusing to grant the permit and that the action of the Commission resulted in an unconstitutional taking of the plaintiff's land. In a Memorandum of Decision dated May 22, 1992, the Superior Court (Klaczak, J.) dismissed the plaintiff's appeal. The plaintiff took no appeal from that decision, and the plaintiff has made no other application to the Commission.
The foregoing proceedings before the Commission and Superior Court establish that, as of October 1, 1993, any "regulated activity" (Conn. Gen. Stat. sec. 22a-38(13)) on Lot 34 is subject to the authority of the Commission. Accordingly, the court is of the opinion, and finds, that the highest and best use of Lot 34, as of October 1, 1993, is the use that may lawfully be made of a vacant lot of record under the restrictions in the deed, the applicable zoning regulations, and the applicable IWWC legislation and regulations. As of October 1, 1993, that highest and best use specifically did not include the use of constructing on Lot 34 the residence described in the plaintiff's March 20, 1991, application to the Commission.
That highest and best use, however, does include the following uses:
(1) The use of Lot 34 to qualify for membership in the Amston Lake Association. That membership carries the right to use Lake Amston, which is not a public lake, and the lakefront recreational areas. Membership requires payment of an annual assessment, currently $43.26.
(2) The use of Lot 34 for the permitted uses specified in Conn. Gen. Stat. sec. 22a-40.
(3) The use of Lot 34 as an extension of the property of an abutting owner by sale to that abutting owner.
(4) The use of Lot 34 for the sale of Transferable Development Rights. These rights are of value primarily to a large tract owner who wishes to increase the number of residences that can be constructed on his tract. The sale of these rights requires the approval of municipal authorities.
II CT Page 8303
In Stamford Apartments Co. v. Stamford, 203 Conn. 586, 589, 525 A.2d 1319
(1987), the Supreme Court said: "[W]hen a property owner challenges the assessor's valuation, `the plaintiffs' burden . . . is a difficult one. [P]roper deference must be given to the judgment and experience of assessors. Connecticut Coke Co. v. New Haven, 169 Conn. 663, 668,364 A.2d 178 (1975). The law contemplates that a wide discretion is to be accorded to assessors, and unless their action is discriminatory or so unreasonable that property is substantially overvalued and thus injustice and illegality result, their opinion and judgment should control in the determination of value for taxation purposes. Federated DepartmentStores, Inc. v. Board of Tax Review, 162 Conn. 77, 86, 291 A.2d 715
(1971), quoting Burritt Mutual Savings Bank v. New Britain, 146 Conn. 669,675, 154 A.2d 608 (1959).' (Emphasis added in original.) Uniroyal,Inc. v. Board of Tax Review, 182 Conn. 619, 633-34 n. 8 438 A.2d 782
(1981). While we have recognized that proper deference should be accorded to the assessor's valuation, we have never characterized such deference as a presumption in favor of the validity of the assessment which it is the plaintiff's burden to rebut." (Internal quotation marks omitted.)
Although there is no presumption in favor of the validity of the assessment, the property owner has "the burden to establish that the defendant's valuation was excessive." Stamford Apartments, at 590. "The burden in such a proceeding as this, as in other actions, is upon the plaintiff to prove his material allegations." Thaw v. Fairfield,132 Conn. 173, 179, 43 A.2d 79 (1945). As the preceding sentences make clear, Connecticut has an on-the-one hand, on-the-other-hand rule concerning the weight to be accorded to a valuation by the assessors. On the one hand, their valuation carries no presumption of validity. On the other hand, "Proper deference must be given to the judgment and experience of assessors . . . [P]roper deference should be accorded to the assessor's valuation." Stamford Apartments, at 589. "Proper deference" requires recognition that "`the process of estimating the value of property for taxation is, at best, one of approximation and judgment and that there is a margin for a difference of opinion.'" ConnecticutCoke Co. v. New Haven, 169 Conn. 663, 668,364 A.2d 178 (1975). The court is of the opinion, and finds, that "proper deference" is warranted in this case for the assessor's valuation. In making that finding, the court notes that, as previously stated, both the Hebron assessor and the Hebron appraiser testified in this proceeding. See Carol Management Corp v. Board of Tax Review, 228 Conn. 23,36, 633 A.2d 1368 (1993) (No deference to be accorded to assessor's valuation when "neither the assessor nor the appraiser who valued the property during the revaluation testifies at trial.") CT Page 8304
 III
Both the plaintiff's appraisal and the defendant's appraisal defined "market value" as follows: "The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently knowledgeably and assuming the price is not affected by undue stimulus." The court concurs in that definition. Both the plaintiff's appraisal and the defendant's appraisal use the "comparable sales" approach to market value valuation.
As noted previously, a property owner has a "difficult burden" in attempting to establish that an assessor's valuation is excessive. In the present case, the plaintiff relies upon the valuation in the plaintiff's appraisal. That appraisal, however, falls short of carrying that burden, for a reason that undermines that appraisal: of the three comparables that the plaintiff's appraisal rests upon, none is in Hebron. All three are in Lebanon, each more than seven miles from Lot 34. "In determining values by comparison, the properties must be similarly located and of like character." Thaw v. Fairfield, supra, 179. One result of the difference in location is that the plaintiff's appraisal made no valuation for values that are peculiar to the "character" of Amston Lake lots, particularly the valuable right to use the non-public lake and lakefront, by membership in the Amston Lake Association.
By contrast, the five comparables in the defendant's appraisal are all located in Hebron. All but one are less than a mile from Lot 34, and three are within one-half mile. Three of the sales took place between June and September of 1993; the other two took place in the summer and fall of 1992. After making adjustments in the comparables for such specifics as size, location and site/view, the assesor [assessor] concluded "that a lot within wetlands area and not buildable reduces the market value by an estimated 50%." The assessor's indicated-market-value of $24,000 before the 50% reduction finds confirmation in Exhibit 2, which shows an average price of $24,557 for "near lake" lots, computed by "Land Residual Technique.
 IV
In the opinion of the court, the plaintiff's appraisal and the comparables listed in it are not of sufficient probative value to outweigh in the scales of proof, "The proper deference [that] must be given to the judgment and experience of assessors." Further, even without regard to the rules of "proper deference," the property owner, as noted previously, has the burden of proof on the issue of whether the assessment is CT Page 8305 excessive. After considering the exhibits and testimony, the briefs of the parties, and the observations that the court made when viewing Lot 34, the court is of the opinion, and finds, that the plaintiff has not sustained its burden of proving that the assessment of Lot 34 is excessive.
Judgment may enter for the defendant.
RUBINOW, State Trial Referee