[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
I. FACTUAL AND PROCEDURAL BACKGROUND
By way of an amended complaint, dated November 3, 1995, the plaintiff, Corbin Russwin, Inc., brought an appeal from the defendant's, Town of Berlin's Board of Tax Review, decision not to adjust its tax assessment for the Grand List of 10/1/93, 10/1/94, and 10/1/95. The plaintiff claims in count one of its complaint that the defendant improperly assessed its property as it is overvalued and thus, overassessed. In count two the plaintiff contends that the assessed value does not conform to assessment rules; the assessed value is greater than the value of the property as of October 1, 1986, the last date of townwide revaluation.
The defendant, the town of Berlin, filed an answer, dated December 20, 1994, and an amended answer regarding the Grand List of 10/1/95, dated October 6, 1995.
Trial to the court commenced on November 21, 1995, continued on November 28 and November 29, and completed on November 30, 1995. The court granted the defendant's motion to view the subject property and met with all counsel on the premises on December 1, 1995, to conduct such a viewing.
During the course of trial the plaintiff called the following witnesses: Edward Heberger, plaintiff's expert real estate appraiser and analyst, and Richard Feegel, the town of Berlin's tax assessor. The defendant called Peter Fiorente, the foreman of the subject property; Peter Marsele, defendant's CT Page 1287-WW expert real estate appraiser; Pamela Harrower, former vice president of finance for the plaintiff corporation; Richard Vannie, senior vice president of Alexander Alexander of Connecticut, Inc.; and John Davis, current vice president of finance for the plaintiff corporation. The plaintiff recalled three witnesses as rebuttal witnesses: Peter Marsele, John Davis, and Edward Heberger.
At the conclusion of evidence, the court ordered both parties to file simultaneous briefs on or before the close of business, January 2, 1996.
II. DISCUSSION
A. Appeals from Board of Tax Review Decision, Generally
Any property owner "claiming to be aggrieved by the doings of the assessors of [a] town may appeal therefrom to [the] board of tax review, which shall determine all such appeals and report in writing the final determination of such appeals to each such person within one week after such determination has been made." Connecticut General Statutes, § 12-111. This statutory section contemplates that a taxpayer should seasonably ascertain whether the valuation placed on his property was correct, and, if it was considered erroneous, resort to appeal.Pitt v. City of Stamford, 117 Conn. 388 (1933). A municipal board of tax review has the unilateral power to equalize and adjust valuations and assessment lists submitted by assessors. Albert Bros., Inc. v. City of Waterbury, 195 Conn. 48
(1985).
Any person who claims to be aggrieved by the action of the board of tax review in any town or city "with respect to the assessment list for the assessment year commencing October 1, 1989, October 1, 1990, October 1, 1991, October 1, 1992, October 1, 1993, and October 1, 1994, may within two months from the time of such action "[appeal] . . . to the superior court for the judicial district in which such town or city is situated . . . The court shall have power to grant such relief as to justice and equity appertains, upon such terms and in such manner and form as appear equitable. . .".
The trial court hears the case de novo. Carol ManagementCorp. v. Board of Tax Review of Town of Greenwich, 228 Conn. 23
(1993). The ultimate question is the ascertainment of CT Page 1287-XX the true and actual value of the taxpayer's property, and the court has broad discretionary power to grant relief. O'Brienv. Board of Tax Review, 169 Conn. 129 (1975); Hutensky v. Townof Avon, 163 Conn. 433 (1972). While it is true that a board of tax appeals' decision should not be disturbed on appeal unless that decision is so unreasonable that the property has been substantially overvalued, Burritt Mutual Savings Bank v.City of New Britain, 146 Conn. 669 (1959), it is also the law that the determination of value rests with the court as the trier of fact. O'Brien, supra at 130-131.
Whether property has been overvalued for tax assessment purposes is a question of fact for the trier. NewburyCommons Ltd. Partnership v. City of Stamford, 226 Conn. 92
(1993). The trier of fact should consider everything that might legitimately affect value. Uniroyal, Inc. v. MiddleburyBd. of Tax Review, 174 Conn. 380 (1978). The trial court's function is to ascertain the true and actual value of the property.Dickau v. Town of Glastonbury, 156 Conn. 437 (1968). This conclusion as to the value of the land must of necessity be a matter of opinion, based on all the evidence, including testimony of experts and a view of the premises. NationalFolding Box Co. v. City of New Haven, 146 Conn. 578 (1959).
It is up to the court as the trier of fact to decide whether experts testifying were qualified and to determine what credence should be extended to those who had qualified. Sibleyv. Town of Middlefield, 143 Conn. 100 (1956); Thaw v. Town ofFairfield, 132 Conn. 173 (1945).
Courts which have reviewed tax appeal cases have held that: (1) the plaintiff bears the burden of proving that the defendant's valuation is excessive, (2) the plaintiff's burden is a "difficult one" because "proper deference" as well as "wide discretion" must be accorded to the assessor, (3) such deference is not a presumption in favor of the assessment, and (4) the court should ascertain the true and actual value of the plaintiff's property if the taxpayer has proven that the property was "substantially overvalued". Stamford Apartments Co.v. Stamford, 203 Conn. 586 (1987). [Burritt Mutual SavingsBank v. New Britain, 146 Conn. 669 (1959) confirms the "substantially overvalued" language; compare with the later case ofO'Brien v. Board of Tax Review, 169 Conn. 129 (1975) which states: "Mere overvaluation is sufficient to justify redress . . . the court is not limited to a review of whether an assessment CT Page 1287-YY has been unreasonable or discriminatory or has resulted in substantial overvaluation."]
The best test for the determination of value is ordinarily that of market sales. Campbell v. New Haven, 101 Conn. 173
(1924). In the absence of such sales, other means are required to be employed. Underwood Typewriter Co. v. Hartford,99 Conn. 329 (1923).
B. Aggrievement
In order to have jurisdiction over this case, the court must find that the plaintiff has been aggrieved by the action of the defendant Board of Tax Review. Connecticut General Statutes § 12-117a. One who purchases real estate and assumes under the terms of the agreement of purchase the taxes assessed on the premises, and thereafter within the time provided by law, appeals to the board of tax review for a reduction of the assessment, is a person or entity aggrieved by the assessment and is entitled to appeal from the action of the board of tax review. Resnik v. City of New Haven,12 Conn. Sup. 47 (1943).
Here, the plaintiff purchased the property in December of 1993. The plaintiff, therefore, became liable for and paid the real estate taxes from the October 1, 1993 Grand List, which were due in July of 1994. This court finds that the plaintiff timely appealed the assessment of the property as it appeared on the October 1, 1993 Grand List to the defendant Board of Tax Review.
The defendant Board denied plaintiff any relief. Accordingly, the court finds that the plaintiff is aggrieved from that denial and timely filed the instant appeal.
C. Instant Appeal
After considering the testimony of all witnesses and carefully reviewing each expert's report, the court makes the following findings of fact:
1. The subject property is located at 225 Episcopal Road in Berlin and consists of a large industrial building situated on 106 acres of land, approximately one half mile from the Berlin Turnpike. CT Page 1287-ZZ
2. The property is zoned Heavy Industrial (HI).
3. The primary building has a gross area of about 780,000 square feet. A manufacturing operation which produced architectural hardware on October 1, 1986, presently continues that production, albeit in a reduced fashion, in the building.
4. A 36,000 square foot foundry building, a 14,000 square foot service building, a 2,400 square foot storage building, a 480 square foot fire pump house, a 300,000 gallon water storage tank, extensive parking for 1400 cars, and a 1,500 foot railroad siding also exist on the property. (Exhibit, Plaintiff's 2)
5. The parcel is served by all utilities, including city water, sewer, gas, electric, and phone. (Exhibit, Plaintiff's 2)
6. The defendant town's value of the property is $35,653,000.00 as of October 1, 1986, the date of the last town-wide revaluation, on all three Grand Lists which are subject of this appeal. Of this amount, $2,601,143.00 is allocated to the land and $33,051,857.00 is allocated to the improvements.
7. Both expert appraisers valued the property at less than the defendant town's value:
a.) Plaintiff's expert, Edward F. Heberger, used a cost approach, a sales comparison approach and an income capitalization approach, deriving an average fair market value of the property as of October 1, 1986, as $21,000,000.00: $2,100,000.00 attributed to the land and $18,900,00.00 [$18,900,000.00] attributed to the improvements. (Exhibit, Plaintiff's 1)
b.) Defendant's expert used both the income approach and the cost approach, deriving a fair market value of the property as of October 1, 1986, as $32,500,000.00: $6,200,000.00 attributed to the land and $26,300,000.00 attributed to the improvements. (Exhibit, Defendant's N)
c.) Defendant's expert's valuation was $3,153,000.00 less than the town's assessed value. CT Page 1287-AAA
8. The highest and best use of the subject property is a continuation of its use as offices, industrial manufacturing, and warehousing.
9. The Corbin Russwin facility is a much larger structure than most industrial facilities in the state. It was constructed in 1969, using good quality materials; it is currently well maintained and in good physical condition.
10. Neither real estate expert was able to locate a substantially similar building which sold on or about October 1, 1986.
11. Neither expert's report deviates substantially from the Uniform Standards of Professional Appraisal Practice (USPAP).
12. The defendant town's last decennial revaluation occurred on October 1, 1986. Since that time there has not been any destruction or expansion of the subject property nor any change in use of zone classification.
After careful review of all evidence in this case, especially the competing appraisals of the two experts, the court concludes that the fair market value of the subject property as of October 1, 1986 is $27,858,000.00. The court attributes $2,786,000.00 to the land and attributes $25,072,000.00 to the improvements. The court arrived at this value by accepting certain comparables of both the plaintiff's and defendant's respective experts and averaging the same as follows:
1. The court rejects both experts' comparables under the cost approach. All of the parcels which defendant's expert used were far too small in acreage to constitute a true comparable. Plaintiff's expert's seven comparables all contained deficiencies. Plaintiff's expert himself testified that comparable #1 was the least comparable of his seven parcels; it was topographically poor and part gravel bank. Comparable #2 was under consideration for a zone change to a RDD zone; it also contained approximately 12% wetlands. Comparable #3 was an undeveloped parcel which was eventually subdivided for an industrial park; as undeveloped its sales price would have been less. Comparable #4 was a 54.4 acre parcel which contained 21 CT Page 1287-BBB acres of swamp; plaintiff's expert did not account for the swampland when arriving at the price per acre. Comparable #5 while comparable in size, 102.46 acres, contained 47.5 acres of wetlands. It was sold as undeveloped land as well and as such, its cost would be less. Comparable #6 consisted of 203.5 acres: 112.5 zoned industrial and 91 acres zoned residential. Both residential and industrial land were "lumped" together in arriving at cost per acre. Comparable #7 was only 16 acres; the court rejected it as the court rejected all of defendant's cost comparables because it was too small to compare to the subject property.
2. Defendant's expert provided no comparables through the sales approach. Plaintiff's expert provided five comparables; comparable #3 is the only one which the court finds viable. The court rejects comparables #1, #2, #4, and #5. Comparable #1 was a sale and lease-back arrangement which in this court's opinion would affect the sales price. As to comparable #2, plaintiff's expert used the incorrect sales price in arriving at his calculation which greatly changed the price per square foot. Comparable #4 was not a direct transfer of title but a stock transfer; again, in this court's opinion that would affect the sales price. Comparable #5 was a property consisting of 19 buildings constructed between 1914 and 1971; this court does not find this property comparable enough to the subject property to be a viable comparison.
Comparable #3, on the other hand, consists of 55.1 acres located in a restricted industrial zone with a sale date of December 16, 1985. The building on site contains approximately 322,664 square feet. Plaintiff's expert testified that the area of wetlands on the property was taken into account in the sales price of $9 million which appears to be a reduced price in light of the mortgage given on the property in the amount of $13.5 million. The sale price per square foot of building to include land is $27.89. This computes to $21,755,231.00 for the subject property (780,037 square feet x $27.89 per square foot).
3. As to the income capitalization approach, the court accepts the plaintiff's expert's capitalization rate of 10.0 and rejects the defendant's expert's capitalization rate of 11.3 as too high. As to plaintiff's comparables through this approach, the court rejects comparables #2 and #3; these comparables are the same properties as improved sales comparables CT Page 1287-CCC #1 and #4 which this court previously rejected. Comparable #1 was a sale lease-back arrangement and comparable #4 was a stock transfer; this court finds these arrangements to affect the sales price and therefore, disqualifies them from consideration.
The court finds comparables #1 and #4 under plaintiff's income capitalization approach to be viable comparables. Comparable #1 and comparable #4 are each 10 year leaseholds of 190,000 square feet and 489,000 square feet respectively. Only minor adjustments had to be made to comparable #1 and aside from an adjustment for leasehold improvements, minimal adjustments were needed for comparable #4. Comparable #1 computed at $3.00 per square foot; comparable #4 computed at $3.75 per square foot. This makes for an average rent of $3.375 per square foot which would compute to $26,326,248.00 [$3.375 per square foot x 780,037 square feet x 10.0 (capitalization rate)].
4. As to defendant's income capitalization approach, defendant's expert testified on cross-examination that the merged office space and industrial space computed out at a composite rate of $4.55 per square foot. The court finds this composite rate to be credible based on defendant's expert's numerical analysis but applies it to the plaintiff's capitalization rate as it finds the defendant's rate to be too high. At this composite rate of $4.55, the value of the subject property computes to $35,491,683.00 [$4.55 per square foot x 780,037 square feet x 10.0 (capitalization rate)].
5. Utilizing numbers which the court has accepted, the court is left with three figures: $21,755,231 26,326,248 35,491,683 ----------- $83,573,162
The average of these three figures is $27,857,720.00, rounded off to $27,858,000.00, the figure this court finds to be the fair market value of the subject property as of October
Both plaintiff and defendant make various arguments regarding the insured value of the premises. The court does not find these arguments to be probative or persuasive to the issue at hand. CT Page 1287-DDD
III. CONCLUSION
After considerable review of the exhibits filed at trial and the post-trial briefs filed by both parities, this court finds for the plaintiff on both counts of its complaint. The court finds that the defendant did overvalue the plaintiff's property. Plaintiff's own expert's appraisal was $3,153,000.00 less than the town's value. The court finds the town's value on the property, $35,653,000.00, to be a substantial overvaluation, although this court does not feel that an overvaluation must be substantial in order to modify a town's valuation. It is this court's opinion an overvaluation, whether substantial or not, is enough to modify a town's valuation. See O'Brien, supra.
This court rejects the majority of comparable properties proposed by both experts regardless of the approach utilized. Based on those comparables or those approaches accepted by the court and then averaged accordingly, this court finds the fair market value of the subject property to be $27,858,000.00. As stated above, of this value the court attributes $2,786,000.00 to the land and $25,072,000.00 to the improvements.
SUSAN B. HANDY JUDGE, SUPERIOR COURT