THE NEW HAVEN TRUST COMPANY, RECEIVER, *vs.* JOHN B. DOHERTY ET AL.

Third Judicial District, Bridgeport, October Term, 1901.
TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, Js.

The testimony of one or more witnesses cannot be said to be uncontradicted, merely because no one testifies in direct opposition, provided there are facts in the case which necessarily challenge or im-

pugn its correctness; and a failure by the trial court to weigh these facts against such testimony, in reaching a conclusion upon a material point, is reversible error.

When a statute creating a new offense provides an appropriate remedy in the enacting or prohibitory clause, or where such a statute contains no prohibitory clause, such remedy is exclusive. But if one section prohibits certain acts, and a separate and substantive section prescribes a remedy for violation of the prohibition, this does not take away the common-law remedy.

General Statutes, § 2887, forbids loans by life insurance companies, unless secured by bonds or stocks having a " market value" of twenty-five per cent in excess of the amount loaned; and § 2890, as amended by Chap. 97 of the Public Acts of 1889, makes any officer or director consenting to a loan in wilful violation of § 2887 personally liable to the company for any loss sustained by such investment or loan, to be recovered by an action brought by the insurance commissioner on complaint of any policyholder or stockholder, and also subjects him to fine and imprisonment. *Held:* —

1. That § 2890 was a remedial as well as a penal statute, and that the special remedy given by it for a wilful violation of § 2887 did not, in the absence of a suit by the insurance commissioner, exclude the company, or its receiver, from recovering at common law or in equity for the loss which it had sustained by wrongful acts of its directors in violation, intentional or otherwise, of § 2887.

2. That § 2887 did not confine life insurance companies to loans on such bonds or stocks only as had a market value established by cash sales in the open market.

While market value is best established by evidence of sales in the open market, resort is necessarily had, in the absence of such sales, to evidence of intrinsic value from those familiar with it.

The fact that certain parties for special reasons would give a particular price for the bonds does not make that price their market value. Such value is the price a thing brings, or is fairly entitled to bring, when offered for sale in the manner usually practiced by those dealing in such articles when they dispose of them.

Judicial notice may be taken of the fact that in 1895 the current rate of interest on moneyed securities exceeded one and three quarters per cent.

Argued October 30th, 1901—decided January 31st, 1902.

ACTION by the receiver of an insolvent life insurance company to recover the amount of a loss claimed to have been sustained by it on account of the negligence of the defendants in making a loan of its funds in violation of law, brought to the Superior Court in New Haven County and tried to

the court, *Roraback, J.* ; facts found and judgment rendered for the defendants, and appeal by the plaintiff for alleged errors in the rulings of the court.  *Error and new trial ordered.*

The case is sufficiently stated in the opinion.

*Henry C. White* and *Leonard M. Daggett,* for the appellant (plaintiff).

*Lucien F. Burpee* and *William H. Ely,* for the appellees (defendants).

BALDWIN, J.   The defendants, as members of the board of directors of the Connecticut Life Insurance Company, voted, in 1895, for a loan of $10,000, for which the company received the borrower's note at four months, with two indorsers, secured by a mortgage on a steam propeller and the pledge of mortgage bonds of the Waterbury Land Improvement Company of the par value of $10,000.   The loan was made after a thorough examination by the board as to the responsibility of the maker and indorsers and the value of the security.   The maker was reported to them, by their attorney, to be a millionaire ; the indorsers to be owners of real estate in New York worth $12,000 ; and the propeller to be worth $10,000.   The only asset of the Waterbury Land Improvement Company was a piece of real estate, mortgaged to another insurance company for $40,000, and worth from $40,000 to $60,000 over and above that mortgage.   Its bonds were secured by a second mortgage ; the entire amount so secured being $70,000, of which, bonds to the value of $40,000 were held by one of the defendants as trustee for the mortgagor, for the purpose of sale, the proceeds to be used to discharge the first mortgage.   The bonds bore five per cent interest, payable semi-annually, and were dated in 1893, and payable in 1903.   The directors all acted in good faith, exercised their judgment fairly and honestly, and believed the security taken to be proper and adequate.

The note, when it matured, was protested ; the prior mort-

gage of the Waterbury Land Improvement Company was foreclosed; the propeller was sold to satisfy a maritime lien; and the loan will be wholly lost unless something can be realized out of the real estate of the indorsers, which is doubtful.

General Statutes, § 2887, forbids loans by life insurance companies, unless secured by mortgage of unincumbered real estate worth double the amount loaned, or by pledge of bonds of the United States or this State of equal value, or of other bonds or stocks having a market value of twenty-five per cent in excess of the amount loaned.

By § 2890, as amended by Chap. 97 of the Public Acts of 1889, any officer or director consenting to a loan in wilful violation of § 2887, " shall be personally liable to the company for any loss which may be sustained by such investment or loan, to be recovered by an action brought by the insurance commissioner of the State on complaint of any policyholder or stockholder in the company suffering thereby, and shall be fined not more than one thousand dollars and imprisoned not more than five years."

The $10,000 loan now in question was not made in violation of this statute, if the bonds of the Waterbury Land Improvement Company, when accepted as security, had a market value of $12,500. The Superior Court finds that " the actual market value of said bonds at that time was $12,500, as was shown by the uncontradicted testimony of Colonel Burpee and others."

It is, however, also found that it did not appear that any cash sales of any of these bonds had ever been made, or any cash offers ever made for them, although some had been disposed of in exchange for valuable property.

The bonds, when taken as security for the loan in question, had but about eight years to run. They would have been discharged by payments, at successive semi-annual intervals, of seventeen sets of coupons, amounting in all to $4,250, and of the principal sum of $10,000 on June 10th, 1903. If $12,500 were paid for them, the buyer would therefore at most receive back the amount thus invested, and $1,750 as

compensation for losing the use of $12,500 for over eight years. This, not allowing any discount for delays, would yield him for each year by way of interest less than $219, or about one and three quarters per cent. The rate of interest prescribed by our laws with reference to ascertaining the insurance reserve which life insurance companies are required to maintain, is not less than four per cent; that which the law allows upon the judgments of our courts is six per cent. All men know, and therefore we must take judicial notice, that in 1895 the current rate of interest on moneyed securities exceeded one and three quarters per cent.

The best test of market value is ordinarily that of market sales. *Sanford* v. *Peck*, 63 Conn. 486, 493. This could not be applied in the present case.

It is too narrow a construction of § 2887 to hold that it prohibited all loans on bonds and stocks not having a market value established by cash sales in the open market. Resort was therefore necessarily had to evidence of intrinsic value. For this purpose, as well as on the general question of due care, the defendants were properly allowed to introduce the testimony of another director, who was with the defendant Platt on the loaning committee, that he was familiar at the time with the value of the land mortgaged to secure the bonds, and as to what that value then was.

The estate of the mortgagor was an equity of redemption. Had the scheme of retiring the first mortgage by the use of the bonds held for that purpose by the defendant Platt been successful, the land would still have been mortgaged for much more than half its value. The mortgagor had no property except this equity.

It may be that certain parties had special reasons for desiring to control the mortgaged property, and as a means to that end were ready, and known to be ready, to buy these bonds at that rate, although no cash offer had been actually made. If this could avail to give them the value stated in the finding, it would not have been their market value. That can only be the price a thing either brings or is fairly entitled to bring when offered for sale in the manner usually prac-

ticed by those dealing in such articles, when they dispose of them.

The testimony upon which the Superior Court found the actual market value of the bonds to be $12,500, cannot, therefore, be properly said to have been uncontradicted. While no witnesses were introduced whose testimony was directly contradictory, there were facts before the court which, when carefully considered, spoke quite as loudly as any witness could. The finding imports that these were not weighed against the testimony of Col. Burpee and others, and as they clearly should have been, there was error in reaching the conclusion, from that testimony alone, that the bonds could be rated at a premium of twenty-five per cent.

The finding in regard to the good faith of the defendants, and the fair and honest exercise of their judgment, may not improbably have been based on the estimate of the value of the bonds which was accepted by the court. There must therefore be a retrial.

The plaintiff does not charge a wilful violation of the statute (General Statutes, § 2887). The remedy for that would be sought under General Statutes, § 2890, and by a different plaintiff. It does allege that the defendants " negligently and wrongfully failed and omitted to obtain proper and sufficient security for the payment of said note, or any security such as the statute in such case made and provided requires." Under the issue raised by the denial of this paragraph, it was sufficient to prove that they wrongfully omitted to obtain for the payment of the note any security such as the statute required. *Williams* v. *McDonald,* 42 N. J. Eq. 392, 7 Atl. Rep. 866 ; Thompson on Priv. Corp., §§ 4019, 4109.

It is suggested that General Statutes, § 2890, is of a penal nature, and therefore that the only civil remedy in a case like the present is a suit by the insurance commissioner.

Where a statute creating a new offense provides also an appropriate remedy in the enacting or prohibitory clause, or where such a statute contains no prohibitory clause, such remedy is exclusive. General Statutes, § 2890, contains no

prohibitory clause. That is in a separate and substantive section. Each stands by itself. Hence, were this a case of 'purely penal legislation, the rule which has been mentioned could not apply. *Hartford & N. H. R. Co.* v. *Kennedy,*. 12 Conn. 499, 514, 526. But General Statutes, § 2890, is both penal and remedial, and the civil remedy which it provides is entirely distinct from that by a criminal prosecution. It was evidently designed to meet the case of a neglect of directors (perhaps of those directly in fault) to sue, by giving a public officer the right to bring an action for a wilful wrong, on the application of any single policyholder or stockholder. This, if no such action were brought, left the corporation which might suffer the loss free to proceed, if it chose, whether the statutory rule were violated intentionally or unintentionally. In the latter case, a suit by the company or its receiver would be the only means of redress.

General Statutes, § 2887, was a prohibitory one. It withdrew what might otherwise have been a right. It laid down a rule of management, any wrongful transgression of which necessarily gave an action to the party injured, either as a wrong at common law, or a breach of an equitable duty. *New Haven Trust Co.* v. *Doherty, ante,* p. 353. Under our system of pleading, both these causes of action were properly combined in the complaint. The special remedy in favor of the insurance commissioner was exceptional and cumulative.

There is error, and a new trial is ordered.

In this opinion the other judges concurred.