HORACE D. BURDICK *v.* UNITED STATES FINISHING
COMPANY ET AL.

MALTBIE, C. J., BROWN, JENNINGS, ELLS and DICKENSON, Js.

Argued November 3—decided December 15, 1943.

*G. Randolph Erskine,* for the appellant (plaintiff).

*Edward S. Pomeranz,* for the appellees (defendants).

ELLS, J. The plaintiff had been employed by the named defendant for forty years as a dyer. During the last six months of that period he had also mixed copper nitrate. This operation consists of placing cop-

per rolls in a large vat of nitric acid. He claims that on two occasions, while so engaged, he got an overdose of nitric acid fumes, resulting in a compensable injury. The commissioner, having heard the case, found against the plaintiff; upon an appeal to the Superior Court the case was remanded to the commissioner for a further hearing and finding of additional facts; after this hearing the commissioner made an amended finding and award in favor of the defendants which, on appeal, the court sustained, and the case comes before us upon the plaintiff's appeal from that judgment.

The determinative question was whether the plaintiff inhaled nitrous fumes in sufficient amount to injure the cells of his respiratory tract, causing him to succumb to bronchopneumonia, or whether he had a pneumococcus pneumonia causally unrelated to his employment except through weakened resistance or lowered vitality. The first exposure to nitrous fumes was on August 15. Three days later he developed a dry cough and a tight feeling in his chest and raised some bloody sputum. He also had chills and sweats and his legs felt tired. He consulted a doctor, who advised him that his condition had nothing to do with his employment but was probably due to bronchitis or heart trouble. Immediately prior to August 15 he had no fever, did not have a cold and had no known heart trouble. He again inhaled some fumes at about 3 o'clock in the afternoon of August 29, had a choking sensation accompanied by coughing and went out into the fresh air for relief. He was able to return to the job and do his regular work until quitting time at six p. m. That night he went from Sterling to Wallingford, a considerable distance, by automobile to visit relatives. During the night he became seriously ill. A doctor was summoned after midnight and found that the plaintiff had difficulty in breathing, a high

temperature and a rapid pulse and respiration and was coughing up a bloody sputum. The physician took a sputum culture which was duly forwarded the following morning to the state department of health, which analyzed it with a finding of no pneumococcus organisms. The doctor treated the patient for two days at home with sulfathiazole, a recognized treatment for pneumonia, and on the third day sent him to a hospital for oxygen treatment. A sputum culture taken there showed the presence of the pneumococcus organism known as type 3, which causes one of the more dangerous forms of pneumonia. The diagnosis at the hospital was diffuse bilateral bronchopneumonia and not nitrous fumes poisoning. The patient had a long convalescence and was able to resume work in May.

The commissioner, relying on expert medical testimony, found that the plaintiff had pneumococcus pneumonia causally unrelated to his employment through a personal injury within the meaning of the Workmen's Compensation Act. Principal claims of error concerned the amount of fumes inhaled and whether the commissioner could legally rely upon the testimony of physicians who were not toxicologists. One of these doctors was found by the commissioner to be an expert in internal medicine, the other "an expert of long practical experience in this textile center in disease of the lungs and chest who is well acquainted with the pneumonia, both chemical and bacterial." Both these experts freely admitted that nitrous fumes in sufficient amount can produce a condition of the lungs which subsequently may develop a pneumonia; it was the opinion of both that the plaintiff did not inhale a sufficient quantity of such fumes to cause such a result. The testimony of the plaintiff as to the amount he had inhaled was vague and unsatisfactory. The basis of the opinion of one expert was, however,

that if the plaintiff had inhaled enough to cause a chemical pneumonia he would have been immediately incapacitated and would not have been able to resume work immediately. The plaintiff produced two experts. His attending physician testified that in his opinion the disablement was a chemical pneumonia due to nitrous fumes. The plaintiff's other expert was a toxicologist, who based her testimony upon her "reading of the record that there was an unusual amount of nitrous fumes present at the time . . . that the man breathed an unusual amount of fumes." Later in her testimony she said to the plaintiff's attorney: "It seems to me you failed to show that in those two particular days there was an unusual amount of fumes." Thereupon the plaintiff was allowed to supplement his previous testimony in the endeavor to show that he had never before been so closely exposed to the fumes. He added very little of importance, and the toxicologist was not asked for her opinion based on this addition. The commissioner did not believe the new testimony. Under these circumstances the expert's frank testimony was of little or no value to the plaintiff.

The situation presents, therefore, the familiar conflict in the opinions of medical experts. It was the province of the commissioner to accept the evidence which seemed to him to be credible and the more weighty. *Cishowski* v. *Clayton Mfg. Co.*, 105 Conn. 651, 655, 136 Atl. 472. The opinion of an expert may be unreasonable, because the grounds upon which it rests are so unreasonable as to make it an error of law for a court to base its decision upon the opinion. *Driscoll* v. *Jewell Belting Co.*, 96 Conn. 295, 299, 114 Atl. 109. The opinion in that case says immediately thereafter: "But in this case the evidence discloses merely a sharp conflict of professional opinion, reasons

for and reasons against, a plain case of conflicting evidence. A finding made by a commissioner upon conflicting evidence is in the same position a similar finding would be in if made by the Superior Court judge. Neither can, except in a most exceptional case, be successfully attacked." The instant case presents the ordinary and not the exceptional situation.

Error is assigned because the trial court, having made two additions to the finding, did not remand the case to the commissioner that he might reconsider his conclusion upon the basis of the changed factual situation. Both facts were in evidence before the commissioner, and the only one which could reasonably be regarded as of material significance was called to the attention of one of the defendant's expert witnesses in the effort to bring about a change in his opinion, but he considered it insufficient. The trial court stated in its memorandum of decision that the additions made would not change the result, and with that we agree. Under the circumstances, we cannot find error in his failing to remand the case.

There is a further claim to the effect that the commissioner required too great a degree of proof as to the exact amount of nitrous fumes inhaled by the plaintiff. There was expert opinion that if the plaintiff inhaled sufficient fumes to cause a chemical pneumonia he could not have finished his day's work. We cannot say that the commissioner erred in relying on this testimony. The plaintiff requested the court to correct the commissioner's finding in various other respects. The motion was denied on the ground that the corrections if made would not affect the decision. The ruling was correct.

There is no error.

In this opinion the other judges concurred.