## NATIONAL FOLDING BOX COMPANY, INC. *v.* CITY OF NEW HAVEN
### (two cases)

DALY, C. J., BALDWIN, KING, MURPHY and MELLITZ, Js.

Argued June 2—decided June 30, 1959

*George W. Crawford,* with whom, on the brief, was *Harold M. Mulvey,* for the appellant (defendant) in each case.

*Frank E. Callahan,* with whom was *John E. Ecklund,* for the appellee (plaintiff) in each case.

BALDWIN, J. These are appeals by the defendant from judgments entered on a report of a committee appointed on appeal to the Court of Common Pleas from the action of the board of tax review of the defendant in fixing the valuation for the purpose of levying real estate taxes on the lists of 1954 and 1955 on the land and buildings of the plaintiff's manufacturing plant. The appeals, one for each of the two years, have been combined under Practice Book § 382.

The assessment date in New Haven is June 1 in each year. As of June 1, 1954, the city assessors valued the plaintiff's lands, of which there were eleven parcels, at $327,195, and the buildings, of which there were twenty-four, at $3,527,410, a total of $3,854,605. As of June 1, 1955, they valued the land as in 1954, and the buildings at $3,134,050, a total of $3,461,245. The change in the valuation of the buildings was due in part to a reduction in the value of one and the listing of a new office and warehouse. On the appeals to the board of tax review, it reduced the valuation on the buildings on the list of 1954 to $2,997,970 but otherwise made no change.

A committee of three appointed by the court conducted an extensive hearing and viewed the plaintiff's premises. The report of the committee, as corrected in response to the defendant's motion to correct, discloses the following facts: The plaintiff's property is in the northeastern section of New Haven. The eleven parcels of land are irregular in shape and size and are traversed by several streets. On the west, some of the land borders the Mill River, a nonnavigable stream. Portions of the land are low and subject to flooding. Most of the buildings are constructed on piles which are not holding up well. The buildings are of varying size, shape and construction. While they are in a fair state of repair, as a whole, they present an antiquated and inefficient manufacturing plant and one which would not be reproduced. Six of the buildings were constructed in 1906 and one in 1915. Five of these are multistoried, old and outmoded. These seven buildings contain 406,236 square feet of floor space out of a total of 673,108 in all of the buildings. There is a great deal of waste space in them. The valuation made by the assessors on the list of 1953 was $88,955 on the land and $1,138,800 on the buildings, a total of $1,227,755. In 1954 the assessors were engaged in the revaluation of real estate required every ten years. Rev. 1958, § 12-62. There had been no revaluation of the plaintiff's properties since 1938 because of the war and an extension of the statutory requirement. Cum. Sup. 1955, § 1046d. The values on the lists of 1954 and 1955 were the result of the 1954 revaluation.

The committee report contains a valuation for each of the plaintiff's twenty-five buildings and for each of the eleven parcels of land. The committee found that the fair market value of the land, on the

list of 1954, was $190,000, and of the buildings, $975,000, a total of $1,165,000; on the list of 1955, $190,000 for the land, and $1,050,000 for the buildings, a total of $1,240,000. The difference between the values placed on the buildings on the two lists is due to the addition on the 1955 list of the new office and warehouse building. The committee specifically found: "[T]he highest and best use of the subject property [is] for lease or sale to investors who are attracted by the possibility of renting as separate buildings or spaces in buildings to manufacturers requiring relatively smaller areas. The fair market value is principally determined by sales of other industrial plants. These sale prices are regulated largely by the potential net income which an investor expects to realize from multitenant operation."

The defendant by motion sought extensive corrections in the finding, some of which were made by the committee. Those made included additional facts which have been incorporated in the summary above, a statement of the defendant's claims before the committee, and rulings on evidence which were challenged by the defendant. As the defendant in its brief in this court has abandoned its challenge to the rulings on evidence, they need not be considered further. After the committee had ruled upon the motion to correct, the defendant filed exceptions to the acceptance of the report as corrected and a motion that the report be rejected. The court overruled the exceptions, denied the motion and accepted the report. It is unnecessary to detail the exceptions taken to the report and passed upon by the court because they are fully comprehended in the claims which were made before us and which we discuss below.

The defendant now claims that the report of the

committee does not conform to the statutes and rules of procedure because the subordinate facts contained in it are not sufficient to support the ultimate facts found by the committee or to enable the trial court properly to adjudicate the legal issues involved. Rev. 1958, § 52-425; Practice Book §§ 174-177. Section 168 of the Practice Book provides that the report of a committee should ordinarily state only the ultimate facts found and the conclusions reached. See *Cohn* v. *Hartford,* 130 Conn. 699, 706, 37 A.2d 237; *Hollister* v. *Cox,* 131 Conn. 523, 525, 41 A.2d 93; Maltbie, Conn. App. Proc. p. 271. A party may, however, request a finding of subordinate facts and the rulings made by the committee. Practice Book § 168; *State* v. *Giant's Neck Land & Improvement Co.,* 118 Conn. 350, 355, 172 A. 861. Obviously, the facts found and the conclusions reached in the report must be adequate to support the judgment rendered. *Rice* v. *Rice,* 134 Conn. 440, 445, 58 A.2d 523. The crucial question on a motion to correct and on exceptions to a committee's report is whether the facts found and the conclusions reached are adequate for the consideration of the claims of law made by the parties. The report of the present committee meets this test. Furthermore, we have examined with care the extensive excerpts from the evidence contained in the appendices to the briefs of the parties, as well as the exhibits referred to, in order to gain a complete comprehension of the legal issues raised. See *Independent Methodist Episcopal Church* v. *Davis,* 137 Conn. 1, 11, 74 A.2d 203.

After the defendant had filed its motion to correct, the plaintiff filed a memorandum on that motion. The defendant claims that the memorandum was improperly filed and was improperly considered by the committee. It is true that the rules do not

require the filing of any such document. They do, however, permit both parties to ask for corrections in the report. Practice Book § 171. If a party desires to assist the committee in considering a motion to correct filed by the opposing party, there seems no logical reason why he should be denied the opportunity to do so. It is within his right to support a report in his favor, as well as to suggest, by way of a motion to correct, amendments which he believes would improve it. There is no merit in this claim.

The defendant claims further that an expert witness who was produced by the plaintiff and who testified at length concerning the replacement cost of the plaintiff's buildings omitted from his calculations fixtures worth many thousands of dollars. These fixtures, such as humidifying systems, fans, cranes, boilers, stokers, water tanks, and artesian wells, were not listed or described by the assessors as items which entered into any of the values fixed by them. The committee viewed the premises, as had the chairman of the board of assessors, and it is fair to assume that the fixtures, as integral parts of the buildings, entered into the estimates of value which were made. If it is conceded that the failure of the witness to include these items was improper, it was harmless because the committee did not adopt the method of valuation advanced by him.

The defendant's motion to correct and the exceptions to the report challenge facts contained in it. These facts are supported by competent evidence, and the conclusions are logically drawn from the facts. The court did not err in accepting the report and ordering judgment entered upon it, unless the committee made some error of law. *Morgan* v. *Hill,* 139 Conn. 159, 161, 90 A.2d 641; *Hartford-Con-*

necticut Trust Co. v. Putnam Phalanx, 138 Conn. 695, 698, 88 A.2d 393; Housing Authority v. Pezenik, 137 Conn. 442, 445, 78 A.2d 546.

The liability of real property in this state to taxation is fixed by statute "at a uniform percentage of its present true and actual valuation, not exceeding one hundred percent of such valuation, to be determined by the assessors." Rev. 1958, § 12-64. The "present true and actual value" of taxable property is defined by statute to be "the fair market value thereof and not its value at a forced or auction sale." Rev. 1958, § 12-63. "The expressions 'actual valuation,' 'actual value,' 'market value,' 'market price' and . . . 'fair value' are synonymous." Sibley v. Middlefield, 143 Conn. 100, 106, 120 A.2d 77, citing Sanford v. Peck, 63 Conn. 486, 493, 27 A. 1057. "Usually, these expressions mean the figure fixed by sales in ordinary business transactions, and they are established when other property of the same kind in the same or a comparable location has been bought and sold in so many instances that a value may reasonably be inferred. Underwood Typewriter Co. v. Hartford, 99 Conn. 329, 334, 122 A. 91. In other words, the best test is ordinarily that of market sales. Campbell v. New Haven, 101 Conn. 173, 185, 125 A. 650; New Haven Trust Co. v. Doherty, 74 Conn. 468, 472, 51 A. 130." Sibley v. Middlefield, supra.

Stressing this statement, the defendant claims that prices realized from sales of comparable property in a normal market furnish the primary test of fair market value and that this test is exclusive when it is applicable, as it was in the instant case. If we assume it to be true, as claimed by the defendant, that the assessors arrived at their valuation by the method of comparable sales, the plaintiff has, never-

theless, by its appeals from the board of tax review, raised the question whether the valuations so arrived at represent the fair market value of its property or, instead, are excessive, disproportionate and unlawful. The statute provides for such an appeal and for reference to a committee, and gives the court the power "to grant such relief as to justice and equity appertains, upon such terms and in such manner and form as appear equitable." Rev. 1958, § 12-118. The court must determine judicially whether the appellant has been aggrieved by such action on the part of the board as would result in the imposition of an unjust tax. If it determines that he has, it must proceed to exercise a broad discretionary power to grant relief. *Sibley* v. *Middlefield,* supra, 105, and cases cited. That we did not mean to imply in *Sibley* v. *Middlefield* that any particular method of valuation, including the method stressed by the present defendant, must be followed, even where it is applicable, is apparent from a further reading of that opinion. After discussing other means of ascertaining present true and actual value, we said (p. 107): "No one method is controlling; consideration should be given to them all, if they have been utilized, in arriving at the value of the property. [Citing *Lomas & Nettleton Co.* v. *Waterbury,* 122 Conn. 228, 231, 188 A. 433.] All of the evidence, both that of sales and that of experts testifying on other methods of fixing valuation, is to aid the trier in arriving at a conclusion . . . ." That conclusion, from the very nature of the problem, must of necessity be a matter of opinion, based, as in the instant case, on all the evidence, including the testimony of experts and a view of the premises, and on the knowledge and experience of the members of the committee. *Bridgeport Hydraulic Co.* v. *Strat-*

*ford,* 139 Conn. 388, 397, 94 A.2d 1; *Cohn* v. *Hartford,* 130 Conn. 699, 705, 37 A.2d 237; *Lomas & Nettleton Co.* v. *Waterbury,* supra, 233; *Appeal of Cohen,* 117 Conn. 75, 85, 166 A. 747. The process, at best, is one of approximation. *Bridgeport Brass Co.* v. *Drew,* 102 Conn. 206, 212, 128 A. 413. Furthermore, whether sales of other property are in fact comparable is a matter of judicial discretion. *Cohn* v. *Hartford,* supra, 704, and cases cited.

The defendant argues that the committee relied upon the plaintiff's experts, who rejected the test of fair market value and adopted the approach of reproduction cost less depreciation, and capitalization of income. The defendant, further, challenges the qualifications of these experts and urges the superior qualifications of its own. As to the latter claim, the acceptance or rejection of an opinion of a qualified expert is a matter for the trier of fact unless the opinion is so unreasonable as to be unacceptable to a rational mind. *Sibley* v. *Middlefield,* supra, 108; *Greenberg* v. *Electric Boat Co.,* 142 Conn. 404, 408, 114 A.2d 850; *Ball* v. *Branford,* 142 Conn. 13, 17, 110 A.2d 459; *Thaw* v. *Fairfield,* 132 Conn. 173, 179, 43 A.2d 65; *Burdick* v. *United States Finishing Co.,* 130 Conn. 455, 458, 35 A.2d 405. Then too, a trier may accept part of the testimony of an expert and reject other parts; *Northeastern Gas Transmission Co.* v. *Tersana Acres, Inc.,* 144 Conn. 509, 512, 134 A.2d 253; at least if the part accepted is not dependent on the parts rejected. *Snyder* v. *Pantaleo,* 143 Conn. 290, 295, 122 A.2d 21. The trier can accept the testimony of the experts offered by one party and reject that of the experts offered by the other. *Morgan* v. *Hill,* 139 Conn. 159, 161, 90 A.2d 641. The committee found that the plaintiff was aggrieved by action of

the board of tax review which would result in the levy of an excessive, and therefore an illegal, tax. The committee then proceeded, as the law requires, to determine the value of the plaintiff's property, and reported it to the court. The committee stated in the report the method employed to determine value. The committee found that the highest and best use of the plaintiff's property would be its use as separate buildings or spaces in buildings by manufacturers who required relatively small areas; that fair market value is determined principally by sales of other industrial plants; and that sale prices are regulated largely by the net income which an investor would expect to realize—in the present case, net income from a multitenant operation. This finding is based upon competent evidence. It appeals to reason. From all the testimony in the case as well as from common experience, it would appear that the possibility of selling the plaintiff's property to a purchaser who proposed to use it as a single manufacturing plant would be extremely remote, while a sale for the purposes stated presents a logical probability.

In *Underwood Typewriter Co.* v. *Hartford*, 99 Conn. 329, 122 A. 91, we said (p. 336) that the words "market value" meant "a value in a market, in a place or in conditions in which there are . . . willing sellers and able and ready buyers of property like that to be assessed, and in which sales are or have been made, or may fairly be expected, in the usual and natural way of business." In the case at bar, the committee could reasonably conclude that the prospect of a sale, in such a market, of the plaintiff's manufacturing plant as a whole, for a single manufacturing operation, was extremely remote and that there were no comparable sales to

use as a measuring stick. Therefore the committee had to resort to some other method of determining value. See *Somers* v. *Meriden,* 119 Conn. 5, 8, 174 A. 184; 51 Am. Jur. 654, § 703. The method chosen, which was in effect the determination of what the market value of the property would be if it were occupied by several tenants who, engaged in manufacturing, required relatively small spaces for their operations, is a justifiable one. It is altogether reasonable to believe that there would be a demand for such use and occupancy. Fixing the value of real property for taxation purposes cannot be accomplished by any single method applicable in all situations. It is largely a question of fact for the trier, using such means as are suggested by the evidence, if those means in reason and logic appear to accomplish a just result and one consonant with the trier's own unbiased judgment.

There is no error in either case.

In this opinion the other judges concurred.