[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The applicant, E.C. LLC, has filed this appeal from the Board of Tax Review of the City of New Haven. It alleges the City assessed the property for the total sum of $338,520.00 on October 1, 1994. That assessment was based upon a total valuation of $483,600.00. The appellant contends it was aggrieved by the actions of the assessors because the value was grossly excessive. The appellant appealed to the Board seeking to reduce the value to its actual value on October 1, 1991, the date of the last re-evaluation. The appeal was filed pursuant to Conn. General Statute § 12-117a. The appellant contends that the total value of the property on that date was $210,000.00. The City in response argues the Fair Market Value on that date was $483,600.00.
The principals of the appellant purchased the property on December 28, 1994 from the Peoples Bank for the sum of $120,000.00. The property is located at 340 Orange Street, New Haven, Connecticut, and it consisted of two storefronts and twelve efficiency apartments. There is no on site parking. Th Peoples Bank had acquired the property by a foreclosure in 1993.
Eric Glidden, a licensed real estate appraiser, filed an appraisal report in November 2000 in which he established his value of the property as of October 1, 1991. His valuation of the property as of that date was $210,000.00. He used a sales comparison approach and relied upon three comparable sales, and also an income capitalization approach. He used three properties located at 845 Congress Avenue, 1249 Chapel Street and 1245 Chapel Street which were mixed use retail and residential use properties. CT Page 13523
In 1991 the real estate market was in a state of decline and marketability throughout the New Haven area were poor for sale of properties. Foreclosure sales were typical and prevalent in New Haven at that time.
Mr. Glidden in appraising the subject property relied upon comparable sales, and also the income approach for the subject property. The storefronts would rent for $600.00 each per month, and the twelve efficiency apartments would rent for $450.00 per month. He testified the gross income of $67,300.00 after deducting vacancies and rent loss at 15%, less the operating expenses, would leave a net income of $37,026.00 per year. That figure capitalized at 14.5 % would establish a value of $255,352.00 based upon the income approach. The capitalization rate was based upon Mr. Glidden's experience in tax appeals he used in 1991.
The 848 Congress Avenue property was acquired by a foreclosure, and it sold for $200,000.00 on June 11, 1990. Because its location was inferior, and its size differed from the subject property, the value was adjusted to $193,800.00 as of October 1, 1991. This property had on-site parking with a paved area in the rear of the building. This comparable was similar in size to the subject property and is a mixed use property. The adjustment considered not only location but also the parking availability.
The comparable of 1249 Chapel Street is located in the west side central business district in a commercial retail location. It has a larger land area with on-site parking and a detached garage. The adjusted value of this property as of October 1, 1991 was $206,630.00 after adjustments are made for the site area, the lack of noise and adverse view factors which affected the subject property which bordered a railroad inactive rail line, as well as the lack of parking on the subject property. This property was a mixed use retail, and two residential apartments. This property had a smaller living area, and an adjustment was made for the difference in size of the smaller area of this comparable. The value of this property as of October 1, 1991 was $191,630.00. However this location was inferior to the subject property, and it would not be a valid comparable.
The 1245 Chapel Street property consisted of 7860 square feet and it is a mixed retail and six residential sleeping rooms and one apartment. The retail area was formerly a Chinese restaurant and it is located in a business district. This property has on-site parking with a two-car detached garage. Mr. Glidden estimated the value of this property as of October 1, 1991 to be $217,840.00 after adjustments were made for the on-site parking and the site area. This property only had one apartment, and its location also was inferior to the subject property. CT Page 13524
The defendant presented Wallace Inkpen, a real estate assessor for the defendant, for a review appraisal of the report filed by Mr. Glidden. He did not file an appraisal, but critiqued the plaintiff's appraisal report. The review of the plaintiff's appraisal report disputed various conclusions reached by Mr. Glidden regarding the comparables, and also the income approach relied upon by him.
William O'Brien, the City Assessor for New Haven, was a witness for the defendant. His office prepared an assessment valuation summary. The opinion reached from the information based upon a mass approval basis was that the subject property had a value of $483,600.00 on October 1, 1991. The land value was estimated at $171,400.00 and the improvements had a value of $312,200.00. Based upon those figures the assessed value would be 70% of the total value which would be the sum of $338,520.00.
Mr. O'Brien in his assessment relied upon comparable sales located at 198 Davenport Avenue, 952 State Street, 922-928 State Street and 232 Crown Street. The values were based upon the square foot values related to the sales prices of the comparables.
The 198 Davenport Avenue property is a mixed use with retail and apartments above the ground floor, and located in an RM2 zone. It had only 2724 square feet. The assessor's card indicated the sales price in August 1991 may have included the value of a going business. Therefore the price of $150,000.00 did not represent the fair market value of the property.
The 952 State Street property is 7,476 square feet and in a BA zone which had a sales price of $595,000.00 in June 1989. This sum included the value of a going Chinese restaurant on the ground floor. In September 1993 this property sold for $300,000.00 which was $295,000.00 less than the value indicated in the assessment survey. The report related to the square foot value of the property in 1989, and it fails to disclose other comparative factors to the subject property. The assessor's card for the property indicates there are six apartments in addition to the restaurant on the first floor. The conclusions in the assessment valuation do not represent the fair market value of the property on October 1, 1991.
The property at 922-928 State Street is a mixed use property located in a BA zone which was listed at a sales price of $650,000.00 in July 1988. The assessor's card states the property was sold May 7, 1991 for $487,500.00, and on April 5, 1993 it was sold again for $142,000.00. The assessor's card shows a valuation of this property in 1991 as $274,000.00. This sum is more indicative of the fair market value than the value indicated in the assessment valuation survey. CT Page 13525
The property located at 232 Crown Street states a sales price of $600,000.00 for a sale in September 1991 and a value of $83.22 per square foot is estimated for the property. The assessor's card for 1991 evaluates the property for $313,200.00. There is no residential use of the property and it was a multilevel bar with no retail stores or apartments. This property is not a valid comparable for the subject property.
In a § 12-117a appeal, the trial court performs a two-step function. "The burden, in the first instance, is upon the plaintiff to show that he has, in fact, been aggrieved by the action of the board in that his property has been over assessed." Gorin's, Inc. v. Board of TaxReview, 178 Conn. 606, 608, 424 A.2d 282 (1979); O'Brien v. Board of TaxReview, 169 Conn. 129, 131, 362 A.2d 914 (1975). In this regard, "[m]ere overvaluation is sufficient to justify redress under [sec 12-117a], and the court is not limited to a review of whether an assessment has been unreasonable or discriminatory or has resulted in substantial overvaluation. Newbury Commons Ltd. Partnership v. Stamford, 226 Conn. 92,104, 6262 A.2d 1292 (1993); O'Brien v. Board of Tax Review, supra, 130-31; see also Hutensky v. Avon, 163 Conn. 433, 436-37, 311 A.2d 92
(1972). "Whether a property has been overvalued for tax assessment purposes is a question of fact for the trier." Newbury Commons Ltd.Partnership v. Stamford, supra, 104. "The trier arrives at his own conclusions as to the value of land by weighing the opinion of the appraisers, the claims of the parties in light of all the circumstances in evidence bearing on value, and his own general knowledge of the elements going to establish value including his own view of the property." O'Brienv. Board of Tax Review, supra, 136.
Only after the court determines that the taxpayer has met his burden of providing that the assessor's valuation was excessive and that the refusal of the board of tax review to alter the assessment was improper, however, may the court then proceed to the second step in a § 12-117a
appeal and exercise its equitable power to "grant such relief as to justice and equity appertains. . . ." See Gorin's Inc. v. Board of TaxReview, supra, 178 Conn. 608; O'Brien v. Board of Tax Review, supra,169 Conn. 131; see also Newbury Commons Ltd. Partnership v. Stamford, supra, 226 Conn. 104; Hutensky v. Avon, supra, 163 Conn. 436-37; HartfordHospital v. Board of Tax Review, 158 Conn. 138, 148, 256 A.2d 234
(1969); National Folding Box Co. of New Haven, 146 Conn. 578, 585,153 A.2d 420 (1959); Underwood Typewriter Co. v. Hartford, 99 Conn. 329,332-33, 122 A. 91 (1923); Ives v. Goshen, 65 Conn. 456, 459-60, 32 A. 932
(1985). "If a taxpayer is found to be aggrieved by the decision of the Board of Tax Review, the court tries the matter de novo and the ultimate question is the ascertainment of the true and actual value of the applicant's property. O'Brien v. Board of Tax Review, supra, 131. "If the CT Page 13526 court finds that the property has been in fact overvalued, it has the power to, and should, correct the valuation." Hutensky v. Avon, supra, 437.
The trier arrives at his own conclusion as to the value of land by weighing the opinion of the appraiser, the claims of the parties in light of all circumstances or evidence bearing on value and his own general knowledge of the elements going to establish value.
The court concludes that the income approach is the most reliable method to determine the value of the property. Therefore, the following figures would be the basis for the conclusion reached as to the value.
2 retail @ $600.00 per month $14,400.00
 12 apartments @ $450.00 per month 64,800.00
79,200.00
Vacancy and rent loss @ 5% 3,960.00
Gross income 75,240.00
Less expenses 45% 33,858.00
Net income 41,382.00
Value @ 13% $318,323.00
The value of the property as of October 1, 1991 has been proven to be over-assessed and the plaintiffs have established they are aggrieved. Therefore, pursuant to § 12-117a of the Conn. General Statutes this court exercises its equitable power to "grant such relief as to justice and equity appertains." The property is found to have a value of $318,323.00 as of October 1, 1991. The assessment shall be reduced on the grand lists for succeeding years until the value of the property has increased or decreased.
Howard F. Zoarski Judge Trial Referee